Reverend William H. SIMPSON and Mrs. Crispina Simpson, Plaintiffs-Appellants,

v.

WELLS LAMONT CORPORATION et al., Defendants,

North Mississippi Conference of the United Methodist Church etc., and Bishop Edward J. Pendergrass, et al., Defendants-Appellees.

No. 73-1027.

United States Court of Appeals, Fifth Circuit.

May 24, 1974.

Arthur G. Gearheard, III, Frank R. Parker, Jackson, Miss., for plaintiffs-appellants.

Newell N. Fowler, Edward R. Young, Memphis, Tenn., for Wells.

John E. McFall, New Orleans, La., for Herschede Hall and Garan.

Gary R. Parvin, Starkville, Miss., for Garan.

William Q. McKee, Starkville, Miss., for Herschede.

Hunter M. Gholson, Columbus, Miss., for Mersman Bros.

Thomas J. Tubb, West Point, Miss., for Pryor Co.

Vardaman S. Dunn, Jackson, Miss., for Kellwood.

John W. Dulaney, Jr., Tunica, Miss., for Irwin Co.

W. C. Butler, Eupora, Miss., for Salley & Lucius.

Bramlett Roberts, Oxford, Miss., for Methodist Church.

Walter Buchanan Meek, Eupora, Miss., for Public Official Defendant.

W. T. Denman, III, Eupora, Miss., for the Lathams and Latham Oil Co.

Charles H. Walker, Oxford, Miss., for defendants-appellees.

Before BELL, AINSWORTH and RONEY, Circuit Judges.

**492**

RONEY, Circuit Judge:

 This case involves the fundamental question of who will preach from the pulpit of a church, and who will occupy the church parsonage. The bare statement of the question should make obvious the lack of jurisdiction of a civil court. The answer to that question must come from the church. The District Court dismissed this civil rights suit brought by a pastor for damages for his ouster by church officials. As if the long history of separation of ecclesiastical courts and civil courts prior to and since the founding of this country were not sufficient to ground an affirmance, the first words of the Bill of Rights in the United States Constitution would clearly establish the unconstitutionality of any law asserted on behalf of the plaintiff: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Certainly a congregation's determination as to who shall preach from the church pulpit is at the very heart of the free exercise of religion, which plaintiffs would corrode with an overlay of civil rights legislation and other parts of the Constitution. The people of the United States conveyed no power to Congress to vest its courts with jurisdiction to settle purely ecclesiastical disputes.

Reverend William H. Simpson and his wife Crispina brought suit for damages against the North Mississippi Conference of the United Methodist Church, various church officials and parishioners, local public officials, and several community business enterprises. In a five count complaint, Simpson alleged that his removal as pastor from four churches in Webster County, Mississippi, and the subsequent eviction of his family from the church parsonage, violated certain federal civil rights and the First, Thirteenth, Fourteenth, and Fifteenth Amendments to the United States Constitution.

Simpson was employed in June 1970 as the lay pastor of the Eupora, Mississippi, Circuit of the United Methodist Church which included the Leganon, South Union, LaGrange and Mount Moriah churches. As part of the employment arrangement, he moved into the Eupora Circuit parsonage.

Choosing "Human Rights" as his initial sermon topic, Simpson began a crusade to rectify certain social behavior which he deemed to be in conflict with church teachings. Whether the subject matter chosen or the manner of its delivery was distasteful, his pulpit messages were displeasing to certain members of the congregation and other Methodist parishioners. Simpson was found inefficient by the Circuit and relieved of his charge. He was first asked and later ordered to vacate the parsonage. After many delays, the church officials obtained an eviction order from the local Justice of the Peace, which was executed by the defendant sheriff, his deputies and constables.

Simpson brought suit against 43 defendants asserting causes of action for violation of rights secured by the Constitution and by 42 U.S.C.A. § 1981 (equal rights to make and enforce contracts and for security of persons and property), § 1982 (equal rights to the enjoyment of property), § 1983 (the right to be free of deprivation of federally protected rights under color of law), § 1985 (the right to be free of unlawful conspiracies to interfere with federally protected rights), and § 1986 (the right to obtain aid from other persons to prevent the violation of federally protected rights).

The church defendants filed a motion for summary judgment based on discovery depositions and 98 pages of affidavits. Simpson filed an answer to the motion and a fourteen page affidavit of his own. In its opinion, the District Court treated the motion for summary judgment as a motion to dismiss for lack of subject matter jurisdiction:

> [N]o matter how one may look at this dispute, it had to do with the substance and content of the very words uttered within the church itself, going right to the heart of the doctrine and beliefs and type of sermons that are

delivered in churches. Now, the church is a sanctuary, if one exists anywhere, immune from the rule or subjection to the authority of the civil courts, either state or federal, by virtue of the First Amendment.

The Court granted the defendant public officials' motion for summary judgment on the ground that they were merely instruments of the church instituted eviction, they were acting in good faith, and they were immune from suit for damages when executing a valid order issued by the Justice of the Peace. The District Court certified the final judgment as to the church and public official defendants to permit this appeal while the case against certain business establishments remained pending.

The First Amendment language that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." historically has stood for the strict prohibition of governmental interference in ecclesiastical matters. Only on rare occasions where there existed a compelling governmental interest in the regulation of public health, safety, and general welfare have the courts ventured into this protected area. *See, e. g.,* Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971); Braunfeld v. Brown, 366 U.S. 599, 81 S. Ct. 1144, 6 L.Ed.2d 563 (1961); Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244 (1879). Such incursions have been cautiously made so as not to interfere with the doctrinal beliefs and internal decisions of the religious society. Thus, the law is clear: civil courts are barred by the First Amendment from determining ecclesiastical questions. Presbyterian Church v. Hull Memorial Presbyterian Church, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969); Kreshik v. St. Nicholas Cathedral, 363 U.S. 190, 80 S.Ct. 1037, 4 L.Ed.2d 1140 (1960); Kedroff v. St. Nicholas Cathedral, 344 U.S. 94, 73

S.Ct. 143, 97 L.Ed. 120 (1952); Gonzalez v. Roman Catholic Archbishop, 280 U.S. 1, 50 S.Ct. 5, 74 L.Ed. 131 (1929); Watson v. Jones, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1872).

Simpson contends, however, that his claim can be resolved without determining questions of religious doctrine. He argues that he "was dismissed because of his views on race and merger of the segregated church organization, and because of the color of his wife's skin, a racial dispute, not a religious dispute." He claims that he was following the church doctrine as enunciated in the United Methodist Church's *Book of Discipline* and was terminated for "inefficiency," not infidelity to those doctrines, so that his discharge necessarily does not involve a church dispute. He contends "his complaint can be resolved on the basis of 'neutral principles of law,' which can be applied without establishing any particular view or interpretation of religious doctrine."

Simpson would narrowly limit ecclesiastical disputes to differences in church doctrine. The cases negative such a strict view. A "spirit of freedom for religious organizations, an independence from secular control or minipulation in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine" is reflected in the Supreme Court's decisions. Kedroff v. St. Nicholas Cathedral, 344 U.S. 94, 116, 73 S.Ct. 143, 97 L.Ed. 120 (1952).

The interaction between the church and its pastor is an integral part of church government. In McClure v. Salvation Army, 460 F.2d 553 (5th Cir.), cert. denied, 409 U.S. 896, 93 S.Ct. 132, 34 L.E.2d 153 (1972), this Court discussed the ecclesiastical nature of the pastor-church relationship.

The relationship between an organized church and its ministers is its life blood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touch-

ing this relationship must necessarily be recognized as of prime ecclesiastical concern. Just as the initial function of selecting a minister is a matter of church administration and government, so are the functions which accompany such a selection.

460 F.2d at 558–559. In *McClure* we held that the application of the equal employment opportunities provisions of the Civil Rights Act to the relationship between the Salvation Army and its officer who was minister would result in encroachment by the state into the area of religious freedom in violation of the First Amendment. The application of the Civil Rights Act provisions urged by Simpson would likewise result in such a prohibited encroachment.

■ Simpson's characterization of his dismissal as racial in nature carries him no further. The Supreme Court has determined in another context that

The values underlying these two provisions [of the First Amendment] relating to religion have been zealously protected, sometimes even at the expense of other interests of admittedly high social importance.

Wisconsin v. Yoder, 406 U.S. 205, 214, 92 S.Ct. 1526, 1532, 1533, 32 L.Ed.2d 15 (1972). "Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation." Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct. 315, 323, 89 L.Ed. 430 (1945).

■ Central Presbyterian Church v. Black Liberation Front, 303 F.Supp. 894 (E.D.Mo.1969), relied on by Simpson, is distinguishable from the case at bar. There the church instituted a civil rights action to enjoin members of the defendant association from disrupting their religious services. The District Court granted the affirmative relief requested because the defendants were preventing the congregation's free exercise of religion. Simpson is not prevented from worshipping by the church's action. He is merely precluded from preaching to them. Although he may have a breach of contract action un- der state law, Simpson has no right under the free speech clause of the First Amendment to be paid for preaching to a congregation that does not wish to hear him.

■ Simpson was dismissed according to the procedures outlined in the Church's *Book of Discipline*. Appeals to the District Superintendent, to the Bishop, and finally to the Central Council of the denomination were available for him to correct any arbitrary or untoward action that may have been taken against him by the congregation. That appellate procedure within the church hierarchy was his avenue for review. In a line of cases from Watson v. Jones, *supra*, to Presbyterian Church v. Hull Memorial Presbyterian Church, *supra*, the Supreme Court has reaffirmed the principle that civil courts are not an appropriate forum for review of internal ecclesiastical decisions. The District Court was correct in dismissing the church defendants for lack of subject matter jurisdiction.

The District Court granted the defendant public officials' motion for summary judgment. Simpson appeals this decision as it relates only to the sheriff, his deputies, and the constables.

The gist of the charge against the defendant public officials seems to be that they unlawfully evicted Simpson from his church-owned residence after the affidavit for eviction was made by the officials of the church. Simpson makes no allegation that the Mississippi eviction statute is unconstitutional, that the eviction order was improperly executed, or that the procedure was characterized by official oppression, abuse, or fraud. Simpson does not allege that the defendant public officials were connected in any way with the denial of Simpson's right to employment as pastor of the Eupora Circuit.

■ The defendant public officials' response to legal duties flowing from church instigated eviction proceedings was in accordance with the laws of Mississippi. Once the affidavit of eviction

was filed, the public officials were duty bound to execute the order which was valid on its face. Their good faith compliance with that duty relieves them of liability. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

The District Court properly decided the case for the defendant public officials on their motion for summary judgment.

Affirmed.