Jack G. NUNN et al., Plaintiffs,

v.

F. D. BLACK et al., Defendants.

Civ. A. No. 80–0065(D).

United States District Court,
W. D. Virginia,
Danville Division.

Jan. 14, 1981.

Fred D. Smith, Jr., Atty. at Law, Martinsville, Va., for plaintiffs.

J. Grady Monday, Atty. at Law, Martinsville, Va., for defendants.

## MEMORANDUM OPINION

DALTON, District Judge.

The plaintiffs in the present litigation are dissident members of the Church of God of Prophecy in Collinsville, Virginia. They bring this action against the General Trustees, the General Overseer of the Worldwide Church Organization, the State of Virginia General Overseer, the local church trustees, and the local minister, alleging that the plaintiffs were denied rights secured by the First, Fifth, and Fourteenth Amendments under color of state law. The jurisdiction of the court is invoked under 28 U.S.C. § 1343, with the plaintiffs seeking relief from alleged violations of their constitutional rights as provided by 42 U.S.C. § 1983. In general, the plaintiffs assert that they were unlawfully expelled from church membership at a congregational meeting and that they were later arrested for trespassing after having been warned to stay off the property.

Specifically, the plaintiffs allege in their complaint that a dispute arose between the defendants and the plaintiffs concerning the authenticity of the plaintiffs' "glossolalia," or speaking in tongues. Apparently, one of the tenets of the Church of God of Prophecy is the belief that the Holy Spirit can inspire and motivate a person to spontaneously speak in tongues. The plaintiffs allege that as a result of this controversy, a meeting was convened in the Collinsville Church on March 5, 1978 with Defendants W. S. Kidd, Jr. and Allen Davis presiding. According to the complaint, the purpose of the meeting was to divest plaintiffs of their membership in the Church. At this time, the plaintiffs were allegedly informed that unless they recanted and admitted that their beliefs in the authenticity of their glossolalia were erroneous, a vote to expel them would be taken. The plaintiffs further allege that they were not provided with an opportunity to respond and thus justify their beliefs. The expulsion vote was subsequently taken by Defendant Davis, with ten members standing to favor removal, while two members indicated to the contrary that they favored retaining the plaintiffs as members. The plaintiffs allege that a determination of the qualifications of those members present and voting at the meeting as apparently required by Church law was never conducted by defendants. Enumerating the alleged procedural improprieties, the plaintiffs noted that Defendant Davis testified in a state court proceeding that he counted all who remained seated as favoring expulsion. The plaintiffs further assert that the expulsion vote "was taken even though the governing law

of the Church of God of Prophecy provides that no votes are to be taken in resolution of disputes, but rather all matters are to be resolved by unanimous consent."

According to their complaint, the plaintiffs continued to attend church services after the expulsion vote was taken. Between November 5, 1978 and November 8, 1978, the plaintiffs allegedly were served with a notice threatening criminal prosecution for trespassing if they returned to the Church. As a result of the plaintiffs' attendance on November 8, 1978, and November 12, 1978, warrants were sworn out by the Local Church Trustees. After their conviction in the General District Court of Henry County, the plaintiffs were *nolle prossed* upon appeal.

In addition, the complaint declares that according to Section 57–7 of the 1950 Code of Virginia, as amended, the plaintiffs, along with the other members of the congregation, are the beneficial owners of the Church property and Defendant Trustees F. D. Black, Irvin Rector and Marshall E. Goard hold only legal title for the benefit of the congregation members. Accordingly, the plaintiffs contend that as they had contributed considerable sums of money to the construction, maintenance, and upkeep of the Church property, the acts of the defendants in the expulsion and criminal trespass prosecutions denied the plaintiffs of their beneficial interest in the Church without due process of law. The complaint stipulates that the defendants have damaged them by subjecting them to ridicule by the arrest proceedings and prosecution. It is further alleged that defendant M. A. Tomlinson, General Overseer of the Church, through his agents, has denied the plaintiffs the right to freedom of religion, freedom of speech and the right to the enjoyment of the property held for their benefit by using the authority vested in them by the State of Virginia and the governing laws of the Church of God of Prophecy and by resort to the state criminal process.

Finally, the plaintiffs pray that the court issue a preliminary injunction restraining the defendants and their agents from insti-

tuting criminal action for trespass on Church property against them with "such time as hearings in accordance with the dictates of the due process clause of the Fifth and Fourteenth Amendments are complied with." In addition, the plaintiffs request that an award of two and one half million dollars in punitive damages and costs be awarded to them.

The defendants responded in their motion to dismiss. Specifically, the defendants moved this court to dismiss the action because the complaint failed to state a claim upon which relief can be granted. In this regard, the defendants contend that the present litigation is merely an attempt "to make a federal constitutional issue out of nothing more than a doctrinal dispute between the established Church and the plaintiffs resulting in their expulsion from membership because of their disruptive behavior during regular Church services." The defendants further contend that State and Federal Courts have traditionally refused to become involved in doctrinal disputes, and have refused to subject ecclesiastical matters similar to the present controversy to judicial inquiry. The defendants further assert that there is no property right in Church membership; rather every person entering in a religious organization impliedly promises to conform to the organization's rules and to submit to its authority. Therefore, the defendants conclude that the plaintiffs have no right to insist on their rights as members where such assertion would invade the rights of the remaining members or those of the collective itself.

Secondly, the defendants argue to dismiss the action on the ground that the complaint fails to allege the loss of a privilege secured by the Constitution or by Federal law. For reasons similar to the defendants' first two substantive objections, they pray that this court deny the plaintiffs' request for a preliminary injunction. Lastly, the defendants request that this court dismiss the action or quash the service of process as to defendants M. A. Tomlinson, Leonard F. Kendrick, Henry O'Neal, Billy Murray, and M. T. Linkous, on the ground that as residents of

Tennessee, they are not subject to service of process within the Western District of Virginia.

After study of the extensive and well researched memoranda of law submitted by both parties concerning the defendants' motion to dismiss, the court feels that a ruling on the motion is appropriate. In view of the authority discussed below, it is evident this court is compelled to grant the defendants' motion to dismiss.

The initial step in the analysis of whether the plaintiffs have stated a claim for which relief can be granted requires the court to determine the requisite elements that must be contained in a claim entitled to relief under § 1983. The United States Supreme Court has succinctly articulated the requisite elements:

> A claim upon which relief may be granted to respondents against Flagg Brothers under § 1983 must embody at least two elements. Respondents are at first bound to show that they have been deprived of a right "secured by the Constitution and the laws" of the United States. They must secondly show that Flagg Brothers deprived them of this right acting "under color of any statute" of the State of New York. It is clear that these two elements denote two separate areas of inquiry. *Flagg Brothers v. Brooks*, 436 U.S. 149, 155 [98 S.Ct. 1729, 1732, 56 L.Ed.2d 185] (1978) (citations omitted). *See also Simpson v. Wells Lamont Corp.*, 494 F.2d 490 (5th Cir. 1974).

Therefore, the first issue for this court to decide is whether the plaintiffs were deprived of a right secured by the Constitution or by Federal law. Specifically, the present inquiry is whether the plaintiffs had a right in Church membership protected by the Constitution or Federal law that was abridged when they were expelled by the congregation. An evaluation of the arguments of both parties and the authority cited therein leads this court to conclude that in the present situation the plaintiffs enjoyed no right to continued Church membership that was protected by Federal law or the Constitution.

In this regard, both the analysis and the factual situation illustrated in the Fifth Circuit's opinion in *Simpson v. Wells Lamont Corp., supra,* is particularly insightful on the issue of whether a federally protected right is presently implicated.

In *Simpson*, a pastor and his wife brought an action for damages against the Church conference, various Church officials, members of the congregation, and local public officials, asserting that his removal as pastor and his later eviction from the parsonage implicated an abridgement of his constitutional rights.

The well-reasoned opinion of the Fifth Circuit is of present pertinence. Factually, the discharged pastor had been found to be "inefficient" by the Methodist Church Circuit, and was then relieved of his duties. After he proved adamant in his refusal to vacate the Church, Methodist officials obtained an eviction order that was executed by the local sheriff. Narrowly defining the instances where the court's intrusion into ecclesiastical matters is warranted, the court stated that:

> Only on rare occasions where there existed a compelling governmental interest in the regulation of public health, safety, and general welfare have the courts ventured into this protected (ecclesiastical) area, (citations omitted). Such incursions have been cautiously made so as not to interfere with the doctrinal beliefs and *internal decisions of the religious society.* Thus, the law is clear: civil courts are barred by the First Amendment from determining ecclesiastical questions. (citations omitted) (emphasis supplied) 494 F.2d at 493.

The *Simpson* court further confined the extent of the court's involvement with ecclesiastical matters by rejecting the plaintiffs' invitation to attempt to find some neutral, secular principles for decision. In so rejecting this attempted relaxation of restraint, the court stated that matters of church government, as well as those of faith and doctrine, were insulated from the court's review. As a result, dismissal for lack of subject matter jurisdiction was deemed proper. 494 F.2d at 495.

In present application, this court is compelled by the First Amendment to avoid adjudicating the issue of whether the plaintiffs' expulsion was in accordance with the procedure prescribed by the Church of God of Prophecy. This is the proper conclusion even though such adjudication may involve more procedural incidents of Church governance rather than more clearly identifiable doctrinal disputations. It is clear from the *Simpson* analysis that both procedural-governance questions and doctrinal disputes are constitutionally removed from this court's review. *Id.* at 493.

Similar decisions of the Federal courts buttress this court's above conclusion that the plaintiffs were not deprived of any rights cognizable under the Constitution or Federal law. It was decided in an early decision of the United States Supreme Court that whenever issues of discipline, faith, ecclesiastical custom, or law have been adjudicated by the highest church judicatories, then that ecclesiastical decision is binding on the civil courts. *Watson v. Jones*, 13 Wall. 679, 727, 20 L.Ed. 666 (1872). Further, the court in the same case opined that in language of present importance that:

> The right to organize voluntary religious associations to assist in the expression and disseminating of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. 13 Wall. at 728–729.

Thus, in present application, it is clear that the plaintiffs have voluntarily submitted to be bound by the decisions of a particular religious society and that they have no recourse for review concerning the validity of their expulsion on the issue of their gift of tongues.[1] And while it has been established that "the First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes," it is certain that the ecclesiastical issue of the validity of the plaintiffs' speaking by inspiration of the Holy Spirit pervades the present controversy and removes it from this court's competence. *See Presbyterian Church v. Hull Church*, 393 U.S. 440, 449, 89 S.Ct. 601, 606, 21 L.Ed.2d 658 (1969). Finally, it is clear that the fact that the local church may have departed arbitrarily from its established expulsion procedures in removing the plaintiffs is of no constitutional consequence, whether one appeals the First, Fifth, or Fourteenth Amendments. *Serbian Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 714, 96 S.Ct. 2372, 2382, 49 L.Ed.2d 151 (1976). It is the very nature of religious matters that ecclesiastical decisions are accepted as articles of faith, as opposed to the rational, objective mode of analysis and procedure used in secular decision-making. Therefore, in the present case, constitutional concepts of due process, involving secular notions of "fundamental fairness" or impermissible objectives, are therefore hardly relevant to such matters of ecclesiastical cognizance. 426 U.S. at 715, 96 S.Ct. at 2383. Thus, the plaintiffs' contentions that their due process rights were violated in that their contributions to the Church were expropriated by the expulsion is of no merit. Similarly, the above conclusion is not varied by the fact that the Church of God of Prophecy has no structured decision-making process.

Even should the court determine that the plaintiffs were deprived of a right secured by the Constitution or by Federal law, the plaintiffs would still have to show that the deprivation occurred under color of State law. *Flagg Brothers, Inc. v. Brooks, supra.* In the present case, this requisite element of "state action" is lacking. The plaintiffs

---

1. Indeed, it has been established that in order to insure the "free exercise" of religion, a federal court can fashion a properly tailored injunction to prevent outside parties who are not invited onto the church property, from so entering and disrupting religious services. *See Action v. Gannon*, 450 F.2d 1227 (8th Cir. 1971).

assert that state action was present in that Virginia law [2] provides for appointment of trustees. The plaintiffs further attempt to satisfy the second requirement by characterizing the trustees act of procuring trespass warrants and the state's subsequent prosecution as indices of state action.

In finding no present element of state action, the court notes that none of the traditional factual patterns that have been found in the past to constitute state action are present. Specifically, the present situation is not equivalent to the court enforcing an agreement or covenant affecting private parties. *See Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). Further, there is not the pervasive state regulation of the private entity in the instant case to warrant a finding of state action. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). The actions of the Commonwealth as evidenced in the above-mentioned statutory authority would not, absent a closer connection with the expulsion than the mere enforcement of the trespass law, provide the necessary state action. *Sims v. Jefferson Downs, Inc.*, 611 F.2d 609 (5th Cir. 1980). *C. f. Simpson v. Wells Lamont Corp., supra.* In addition, this court is cognizant of the fact that state action has been found where private parties perform a function "traditionally exclusively preserved to the State." *Jackson v. Metropolitan Edison Co., supra* 419 U.S. at 352, 95 S.Ct. at 454. It is beyond controversy, however, that the operation of a religious society is not a governmental function.

Finally, the actions of the defendants in securing warrants for trespass were not of sufficient character for this court to find these private parties acted under color of state law. *See, White v. Scrivner Corp.*, 594 F.2d 140 (5th Cir. 1979).

Accordingly, for the above reasons, the defendants' motion to dismiss must be granted.

2. *See* Code of Virginia, § 57–7, § 57–15 (1950, as amended).