Green 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-94-00088-CV








Reverend Homer Green, Appellant




v.




United Pentecostal Church International, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 92-00572, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING







 Appellant Reverend Homer Green sued appellee United Pentecostal Church
International ("UPCI") for damages arising from UPCI's cancellation of his affiliated minister's
license under theories of contract and tort. The trial court granted UPCI's motion to dismiss for
lack of jurisdiction, concluding that the First Amendment to the United States Constitution
precluded its jurisdiction over the suit. We will affirm the trial court's order dismissing this
action.



BACKGROUND


 UPCI licenses Pentecostal ministers; without a UPCI license, a minister cannot
contract for employment with any UPCI-affiliated Pentecostal congregation. Green was a
Pentecostal minister licensed by UPCI. In 1989, the Texas District Board of UPCI charged Green
with immoral conduct and conduct disruptive to his local congregation, the Westgate Apostolic
Church. The Judicial Procedures for Ministers (the "JPFM") included in the Manual of the
United Pentecostal Church sets out procedural guidelines for resolving grievances and charges
filed against licensed ministers. The JPFM provides that after a District Board files a charge, the
accused minister is entitled to a pretrial hearing at which a three-member panel akin to a grand
jury receives evidence to determine whether there is sufficient evidence for the matter to proceed
to a "jury trial." Accordingly, a pretrial hearing was conducted on November 28 and 29, 1989.

 During the time leading up to the pretrial hearing, Green was involved in an
unrelated civil suit in Travis County district court against his church and some of its members. 
See Green v. Westgate Apostolic Church, 808 S.W.2d 547 (Tex. App.--Austin 1991, writ denied). 
The civil suit involved a dispute over control of the Westgate church and its property, and Green
sought exemplary damages from several individuals, three of whom came forward to testify at the
ecclesiastical pretrial hearing.

 The three-member tribunal presiding over the ecclesiastical pretrial hearing
determined that sufficient evidence existed to go forward with a trial on the charges against Green,
and pursuant to the JPFM, the "jury trial" was scheduled to commence on January 18, 1990. 
However, two days before trial, UPCI summarily cancelled Green's license and terminated his
UPCI credentials. UPCI contends that it terminated Green's license before the "jury trial"
because of Green's actions during and after the pretrial hearing. According to UPCI, Green
deliberately attempted to intimidate two of the witnesses to the ecclesiastical proceedings by
serving them with notices of intent to take their oral depositions in the pending civil suit. UPCI
further contends that immediately following the pretrial hearing, Green caused the records and
tapes of the hearing to be subpoenaed for use in the pending civil suit in violation of Article V of
the JPFM, which states that "[a]ll transcripts and records of the hearing shall be the property" of
the Church and that the records "cannot be opened except by approval of the Executive Board." 
When the General Board of the Church met on January 16, 1990, it determined that Green's
intimidation of witnesses warranted immediate termination of his license:



Motion made and seconded that Homer Green be dropped as recommended by the
Presiding Officer. The reason for this being because of the outrageous and blatant
disregard for ethics and Christian principle and complete lack of any attempt on
his part to comply with the requirements of the Judicial Procedure with regard to
intimidation of witnesses. Carried. (Emphasis added.)



 Green contends that the JPFM guarantees "ecclesiastical due process" to a minister
charged with misconduct. According to Green, his license could not be cancelled until a "jury"
of his similarly licensed peers found him guilty of the charges. Based on UPCI's alleged failure
to follow the procedural requisites set out in the JPFM, Green filed suit claiming substantial
damages arising in contract and tort. UPCI filed a motion to dismiss for want of jurisdiction,
claiming that the trial court lacked subject matter jurisdiction over the suit because Green's claim
"brings into question the decision of an ecclesiastical body as to the retention of a minister." The
trial court agreed and dismissed the suit for want of jurisdiction. Green raises twelve points of
error challenging the trial court's judgment.



DISCUSSION


 In his first eight points of error, Green contends that the trial court erred in
granting UPCI's motion to dismiss. His arguments raise a single issue for this Court to
address--UPCI's authority to determine who will preach in UPCI-affiliated churches. The First
Amendment of the United States Constitution, applied to the states through the Fourteenth
Amendment, provides: "Congress shall make no law respecting an establishment of religion, or
prohibiting the free exercise thereof." U.S. Const. amends. I, XIV. The Constitution thus
mandates that government and religion remain separate and accordingly forbids the government
from interfering with the right of hierarchical religious bodies to establish their own internal rules
and regulations and create tribunals for adjudicating disputes over religious matters. See Serbian
E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 708-09, 724-25 (1976). It has been well
settled for over 120 years by the United States Supreme Court that when the highest authority of
a church judicatory has decided questions of discipline, faith, or ecclesiastical rule, custom, or
law, secular civil courts must accept such decisions as final and binding:



The right to organize voluntary religious associations to assist in the expression
and dissemination of any religious doctrine, and to create tribunals for the decision
of controverted questions of faith within the association, and for the ecclesiastical
government of all . . . within the general association, is unquestioned. All who
united themselves to such a body do so with an implied consent to this government,
and are bound to submit to it. But it would be vain consent and would lead to total
subversion of such religious bodies, if any one aggrieved by one of their decisions
could appeal to the secular courts and have them reversed. It is of the essence of
these religious unions, and of their right to establish tribunals for the decision of
questions arising among themselves, that those decisions should be binding in all
cases of ecclesiastical cognizance, subject only to such appeals as the organism
itself provides for.



Watson v. Jones, 80 U.S. (13 Wall.) 679, 728-29 (1871) (emphasis added).

 UPCI's decision to terminate Green's license was a purely ecclesiastical matter. 
"The relationship between an organized church and its ministers is its lifeblood. The minister is
the chief instrument by which the church seeks to fulfill its purpose. Matters touching this
relationship must necessarily be recognized as of prime ecclesiastical concern." McClure v.
Salvation Army, 460 F.2d 553, 558-59 (5th Cir.), cert. denied, 490 U.S. 896 (1972). Green
argues that his claim can be resolved on the basis of neutral principles of law without "secular
intrusion" into, or "ecclesiastical entanglement" with, any religious matters. We disagree.

 We are persuaded by the Fifth Circuit's holding in Simpson v. Wells Lamont Corp.,
494 F.2d 490 (5th Cir. 1974), that the interaction between a church and its pastor is an integral
part of church government:



This case involves the fundamental question of who will preach from the pulpit of
a church . . . . The bare statement of the question should make obvious the lack
of jurisdiction of a civil court. The answer to that question must come from the
church. . . . The people of the United States conveyed no power to Congress to
vest its courts with jurisdiction to settle purely ecclesiastical disputes.



Id. at 492. 

 In resolving the charges against Green, UPCI followed the procedures set out in
the JPFM. Based on its determination that Green violated provisions of ecclesiastical conduct
prohibiting the intimidation of witnesses and the subpoenaing of church documents, the UPCI
Governing Board terminated his license without proceeding to the jury trial. After the revocation
of his license, Green appealed the revocation pursuant to the JPFM, and he was dismissed
according to the procedures outlined in the JPFM. Notwithstanding Green's claims that UPCI
violated its own rules, we conclude that the trial court properly dismissed his claim for want of
jurisdiction, correctly refusing to intrude into ecclesiastical rules, policies or decisions.



Plaintiffs' effort to distinguish the long line of precedents on the ground that the
Church . . . failed to follow its own rules, thereby denying the pastor "due
process," is unavailing. We look to the substance and effect of plaintiffs'
complaint, not its emblemata. Howsoever a suit may be labelled, once a court is
called upon to probe into a religious body's selection and retention of clergymen,
the First Amendment is implicated.



Natal v. Christian & Missionary Alliance, 878 F.2d 1575, 1577 (1st Cir. 1989); see also
Patterson v. Southwestern Baptist Seminary, 858 S.W.2d 602, 605-06 (Tex. App.--Fort Worth
1993, no writ). Green was dismissed as an act of discipline, and questions of church discipline
and government are left to the church, limited only by the courts' supervision of property and civil
rights. See Hughes v. Keeling, 198 S.W.2d 779, 783 (Tex. Civ. App.--Beaumont 1946, writ ref'd
n.r.e.). 

 Green's claim that UPCI's decision was "arbitrary, fraudulent or collusive" does
not open the door for this Court to review UPCI's decision. The Supreme Court has left
unresolved the question of whether there is room for "marginal civil court review" of the
decisions of ecclesiastical tribunals under the narrow rubrics of fraud or collusion; however, it
has made clear that there is no "arbitrariness" exception to the general rule that civil courts are
bound to accept the decisions of ecclesiastical tribunals on religious matters. See Milivojevich,
426 U.S. at 713. "Constitutional concepts of due process, involving secular notions of
`fundamental fairness' or impermissible objectives, are therefore hardly relevant to such matters
of ecclesiastical cognizance." Id. at 715. Civil courts are barred from entertaining claims that
ecclesiastical procedures were arbitrary and thus violated fundamental due process rights:



For civil courts to analyze whether the ecclesiastical actions of a church judicatory
are in [a] sense "arbitrary" must inherently entail inquiry into the procedures that
canon or ecclesiastical law supposedly requires the church judicatory to follow .
. . . But this is exactly the inquiry that the First Amendment prohibits; recognition
of such an exception would undermine the general rule that religious controversies
are not the proper subject of civil court inquiry . . . .



Id. at 713. While the Supreme Court has left open the possibility that fraud or collusion claims
may serve as vehicles for civil court review of ecclesiastical decisions, Green has failed to
establish egregious conduct on the part of UPCI that would trigger our review under such an
exception. Green is seeking civil court review of the subjective judgment of UPCI's governing
body that his license should be revoked due to his "blatant disregard for ethics and Christian
principle." A civil court cannot constitutionally intervene in this dispute because this is exactly
the type of intervention the First Amendment was designed to prevent. See Hutchison v. Thomas,
789 F.2d 392, 393 (6th Cir. 1986). Thus, we overrule Green's first eight points of error. 
Because of our disposition of these points, it is unnecessary for us to address the four remaining
points of error. 

 


CONCLUSION


 Green's complaint directly involves, and would require intrusion into, rules,
policies, and decisions that are unmistakably of ecclesiastical cognizance. The First Amendment
bars such an inquiry. For this reason, we overrule Green's first eight points of error and affirm
the trial court's order dismissing the cause for want of subject matter jurisdiction.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: May 3, 1995

Publish