[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13755
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-03899-SCJ

STEINAR MYHRE,

Plaintiff - Appellant,

versus

SEVENTH-DAY ADVENTIST CHURCH REFORM MOVEMENT
AMERICAN UNION INTERNATIONAL MISSIONARY SOCIETY,
a New Jersey corporation,
INTERNATIONAL MISSIONARY SOCIETY SEVENTH-DAY ADVENTIST
CHURCH REFORM MOVEMENT GENERAL CONFERENCE,
a California corporation,
DOES 1-100,
THE SEVENTH-DAY ADVENTIST CHURCH REFORM MOVEMENT
INTERNATIONAL MISSIONARY SOCIETY (A TEXAS CORP),
THE SEVENTH-DAY ADVENTIST CHURCH REFORM MOVEMENT
AMERICAN UNION IMS, INC., et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 2, 2018)

Before WILLIAM PRYOR, MARTIN and JILL PRYOR, Circuit Judges.

PER CURIAM:

Steinar Myhre appeals *pro se* the dismissal of his second amended complaint against the International Missionary Society Seventh-Day Adventist Church and several of its subordinate divisions and unions. Myhre complained about the termination of his retirement benefits for not "remain[ing] as a member of good standing of the denomination" after being defrocked and excommunicated from the Church. The district court ruled that entertaining the ecclesiastical dispute would violate the First Amendment of the United States Constitution. We affirm.

Myhre alleged that several subordinate divisions of the Church, which he referred to collectively as the American Union, cancelled his retirement benefits in 2013 because of a "theological disagreement." Myhre alleged that, in 2009, he began collecting benefits after fulfilling the three conditions identified in his human resource manual for eligibility: he had "remained as a member in good standing of the denomination"; "completed 10 years of full-time paid service for the American Union"; and "reached or exceeded the retirement ag[e]." The

2

cancellation of those benefits, Myhre complained, constituted a breach of his express and implied contracts with the American Union. Myhre also complained that the American Union breached its covenant of good faith and fair dealing by "secretly abolishing [his] membership in violation of [its] own policies and procedures" and that the "General Conference," with which "the highest level of authority reside[d]" in the Church, interfered in the contract between him and the American Union. In addition, Myhre complained that the American Union defrauded him by breaking its promise to pay benefits and by terminating payments after the statute of limitation expired "under the California Elder Abuse Protection Act, extortion . . . and other tort actions"; that the American Union converted retirement payments due to him; and that the subordinate divisions in the American Union conspired to terminate his benefits "to punish him for [his] beliefs on religious matters."

American Union filed a motion to dismiss Myhre's complaint for lack of subject matter jurisdiction, which the district court granted. *See* Fed. R. Civ. P. 12(b)(1). The district court ruled that Myhre's complaint turned on an "interpretation of [what constitutes a] 'member in good standing' under . . . denominational rules of governance, custom, and faith" and any ruling on the merits would interfere with or constitute "an establishment of religion" in violation of the First Amendment. The district court also ruled that Myhre's claim of fraud

3

necessitated more than "the marginal review allowed under the fraud exception" to the ecclesiastical abstention doctrine; that his claim of contractual interference was unintelligible; and his claim of conspiracy failed to allege that the subordinate divisions "violated [California] statutes" or how they "colluded together."

We review *de novo* the dismissal of a complaint for lack of jurisdiction and related factual findings for clear error. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013).

Civil courts lack jurisdiction to entertain disputes involving church doctrine and polity. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof," U.S. Const. Amend. I, and civil actions involving ecclesiastical disputes implicate both the Establishment and Free Exercise Clauses, *Crowder v. S. Baptist Convention*, 828 F.2d 718, 721 (11th Cir. 1987). "By adjudicating religious disputes, civil courts risk affecting associational conduct and thereby chilling the free exercise of religious beliefs. Moreover, by entering into a religious controversy and putting the enforcement power of the state behind a particular religious faction, a civil court risks 'establishing' a religion." *Id.* These concerns require civil courts to abstain from deciding issues connected to "theological controversy, church discipline, ecclesiastical government, or conformity of members of the church to the standard of morals required of them," *id.* at 722

4

(quoting *Watson v. Jones*, 80 U.S. 679, 733 (1871)), and to accept as binding the decisions of religious organizations regarding the governance and discipline of their clergy, *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 723 (1976) (holding that civil courts could not review a church decision to defrock a bishop); *Simpson v. Wells Lamont Corp.*, 494 F.2d 490, 493–94 (5th Cir. 1974) (affirming the dismissal of an action involving the ouster of a pastor and his eviction from the parsonage).

The district court correctly dismissed Myhre's complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A dispute involving the application of church doctrine and procedure to discipline one of its members is not appropriate for secular adjudication. *See Milivojevich*, 426 U.S. at 723; *Crowder*, 828 F.2d at 726. Myhre's claims, which were predicated on his defrocking, his excommunication, and the termination of his retirement benefits due to a "theological disagreement" would have required encroachment into matters of church dogma and governance. Based on "the separation of church and state principles required by the [E]stablishment and [F]ree [E]xercise [C]lauses of the [F]irst [A]mendment," *Crowder*, 828 F.2d at 718, the district court could not interfere with the purely ecclesiastical decisions of the American Union regarding Myhre's fitness to serve in the clergy or to remain a member of the denomination.

5

Civil courts may apply neutral principles of law to decide church disputes that "involve[] no consideration of doctrinal matters," but Myhre's complaint required examination of church doctrine and polity. *See Jones v. Wolf*, 443 U.S. 595, 602, 603 (1979). Myhre's claims of breach of contract, fraud, conversion, conspiracy, and contractual interference turned on whether he was entitled to retirement benefits. And Myhre's entitlement to retirement benefits was conditioned on, among other things, that he "remain[] as a member in good standing" of the Adventist Church. As the district court stated, it could not "define 'member' for a specific church or denomination . . . [because that would require] defin[ing] the very core of what the religious body as a whole believes." Likewise, to determine if Myhre "ha[d] remained 'in good standing,'" the district court explained, it would have had to "scrutinize documents related to church rules and discipline and . . . apply its interpretation of those rules to [Myhre's] conduct. In other words, the [district] [c]ourt would have [had] to determine whether [American Union] exercised [its] religion in accordance with the[] doctrine, faith, custom, and rules of governance" of the Church. Because Myhre's claims required an examination of doctrinal beliefs and internal church procedures, the district court had no power to entertain Myhre's controversy with the American Union and the General Conference. *See Wolf*, 443 U.S. at 603–04.

Myhre's claim that American Union breached its implied covenants of good faith and fair dealing also would require review of a decision about internal church governance. Myhre alleged that he had been defrocked, excommunicated, and had his retirement benefits cancelled in violation of church procedural rules and the process afforded other ministers. *See Milivojevich*, 426 U.S. at 713. But *Milivojevich* prohibits civil courts from undertaking "an inquiry [into] whether the decisions of the highest ecclesiastical tribunal of a hierarchical church complied with church laws and regulations." *Id.* Such an inquiry by a civil court "would undermine the general rule that religious controversies are not the proper subject of civil court inquiry, and that a civil court must accept the ecclesiastical decisions of church tribunals as it finds them." *Id.* Myhre sought review of the procedures that resulted in ecclesiastical decisions and necessitated a review of religious law and practice, which "is exactly the inquiry that the First Amendment prohibits" civil courts from undertaking. *See id.*; *Simpson*, 494 F.2d at 494.

The district court correctly determined that it could not, consistent with the First Amendment, entertain issues regarding the application by American Union of church rules and standards to discipline a member of its clergy. Because the "subject-matter of [Myhre's] dispute[ was] strictly and purely ecclesiastical in . . . character," *Milivojevich*, 426 U.S. at 713, the district court lacked jurisdiction to entertain Myhre's complaint.

7

We **AFFIRM** the dismissal of Myhre's complaint.

8