MORRIS STREET BAPTIST CHURCH v. DART.

1. SPIRITUAL COURTS—CHURCHES.—CIVIL COURTS do not review the actions of spiritual bodies, but only look into them when civil rights are involved, to see if the act invoked or attacked is the act of the proper authority, and it is here found that the congregation in the Baptist Church is supreme, and the majority of its members may dismiss its pastor without notice or trial on charges at a regular business meeting properly called, and that this action was instituted by the proper church authorities.

2. PASTOR'S SALARY—COUNTER-CLAIM—COSTS.—It not being a condition precedent that a pastor's salary should be paid in full before dismissal, and amount due on salary not being in question here, Court cannot set off costs adjudged to be paid by pastor against amount due on his salary.

Before GARY, J., Charleston, February, 1903.    Affirmed.

Action by Morris Street Baptist Church against John L. Dart.    From Circuit decree, defendant appeals.

Messrs. W. St. Julien Jervey and J. S. Mitchell, for appellant (no citation in Brief).

Messrs. Jno. G. Capers and L. D. Melton, contra.    Mr. Capers cites: Civil Courts will not review acts of spiritual courts: 3 B. Mun., 253; 54 Mo., 353; 62 Ia., 26; 5 Del. Ch., 573; 80 U. S., 679; 1 Strob. Eq., 387; 137 U. S., 147.

October 26, 1903.    The opinion of the Court was delivered by

MR. JUSTICE WOODS.    This action was instituted on May 28th, 1902, by "The Morris Street Baptist Church," a body

corporate, having its principal place of worship in the city of Charleston, against John L. Dart. The prayer of the plaintiff was that the defendant be perpetually enjoined and restrained "from exercising or attempting to exercise his alleged functions as alleged pastor" of the said church, and from entering the pulpit thereof or attempting to preach therein. The complaint alleges that at a duly authorized meeting of the church, held on April 10th, 1902, resolutions in accordance with the policy of the church, and the laws, rules and regulations governing the same, were adopted by the vote of a large majority of the total membership, requesting the resignation within thirty days of the defendant, John L. Dart, as pastor of the church. It is further alleged that Dart was present at the meeting, and knew the purport and object of the resolution and request, and was also duly notified in writing of the action of the congregation, but that he refused to recognize the authority of the meeting, and although warned to desist therefrom, entered the church building on several occasions with force and violence, and continued to exercise or attempted to exercise the functions of pastor of the church, in violation of the resolution; and threatened a continuation of such conduct, thus preventing the plaintiff from carrying on the usual religious exercise and worship.

Upon hearing the complaint, his Honor, Judge Dantzler, on May 28th, 1902, granted a temporary restraining order against the defendant, requiring him to show cause on June 2d next thereafter, why an injunction should not issue pending the hearing of the case on its merits. This rule came on to be heard June 19th, 1902, before his Honor, Judge Gage, who, after hearing the return of the defendant and argument of counsel for both sides, ordered:

"That the Morris Street Baptist Church building be closed and remain closed until the further order of this Court, none of the officers and members of said church of either faction being permitted to enter or use the same for any purpose.

"It is further ordered, that the return herein filed be taken

as an answer, leave being given to the defendant to amend same in such particulars as he may be advised. And that it be referred to G. H. Sass, Esq., master, to take testimony and determine whether or not the defendant has been regularly tried and dismissed from the office of pastor of said church, according to the rules and regulations thereof, and that if he finds this issue in the affirmative, he report the same to this Court for such further order as may be proper; and that if he find said issue in the negative, he dismiss the complaint. And that he have leave to report special matters."

The return of the defendant, which, under the order of the Court, is to be taken as his answer, denies that any regular authorized meeting of the church was held on April 10th, 1902; and alleges that on April 17th, 1902, there was a meeting specially called, which repudiated the action of the former meeting, which is characterized as a mob. The defendant also alleges that he is supported by a great majority of the regular, *bona fide* communicants of the church, and denies the right of the complainants to bring this action in the corporate name. It is further alleged that over $900 is due the defendant as arrears of salary, and that under these circumstances he should not be enjoined from exercising and performing his duties as pastor of the church.

After holding numerous references and taking a large amount of testimony, the master on August 9th, 1902, filed his report, finding the issue referred to him in the affirmative; holding that John L. Dart has been regularly dismissed from the office of pastor of Morris Street Baptist Church, according to the rules and regulations thereof, as the same are interpreted and set forth in the report.

Counsel for defendant filed exceptions to this report, and the cause was heard by his Honor, Judge Ernest Gary, who in a decree dated February 3d, 1903, overruled the exceptions, and confirmed the master's report in all particulars, ordering that the complainants be allowed to re-enter the church and use the same, as had been their custom, as a

place of public worship, "unmolested and unrestrained by the said J. L. Dart or parties codefendant with him." It was also ordered, that all costs be taxed up against the defendant, and that if the same be not paid within thirty days from the filing of the decree, that execution be issued against him therefor. From the judgment of Judge Gary defendant appeals.

Before entering upon the consideration of the questions of fact involved in the appeal, it is necessary to determine the extent to which this Court as a civil tribunal can interfere in this unfortunate church controversy. The generally accepted doctrine is nowhere better stated than in the case of *Harmon* v. *Dreher,* Speer's Eq., 87, which is thus referred to in *Watson* v. *Jones,* 13 Wallace, 679 :

"One of the most careful and well considered judgments on the subject is that of the Court of Appeals of South Carolina, delivered by Chancellor Johnstone, in the case of *Harmon* v. *Dreher,* 1 Speer's Eq., 87. The case turned upon certain rights in the use of the church property claimed by the minister, notwithstanding his expulsion from the synod as one of its members. 'He stands,' says the Chancellor, 'convicted of the offenses alleged against him, by the sentence of the spiritual body of which he was a voluntary member, and whose proceedings he had bound himself to abide. It belongs not to the civil power to enter into or review the proceedings of a spiritual court. The structure of our government has, for the preservation of civil liberty, rescued the temporal institutions from religious interference. On the other hand, it has secured religious liberty from the invasion of the civil authority. The judgments, therefore, of religious associations, bearing on their own members, are not examinable here, and I am not to inquire whether the doctrines attributed to Mr. Dreher were held by him, or whether if held were anti-Lutheran; or whether his conduct was or was not in accordance with the duty he owed to the synod or to his denomination. * * * When a civil right depends upon an ecclesiastical matter, it is the civil court,

and not the ecclesiastical, which is to decide. But the civil tribunal tries the civil right, and no more, taking the ecclesiastical decisions out of which the civil right arises, as it finds them.' " See, also, *John's Island Church,* 2 Rich. Eq., 215; and extended note, 49 L. R. A., 384.

The civil courts will not enter into the consideration of church doctrine or church discipline, nor will they inquire into the regularity of the proceedings of the church judicatories having cognizance of such matters. To assume such jurisdiction would not only be an attempt by the civil courts to deal with matters of which they have no special knowledge, but it would be inconsistent with complete religious liberty untrammeled by state authority. On this principle, the action of church authorities in the deposition of pastors and the expulsion of members is final. Where, however, a church controversy necessarily involves rights growing out of a contract recognized by the civil law, or the right to the possession of property, civil tribunals cannot avoid adjudicating these rights, under the law of the land, having in view, nevertheless, the implied obligations imputed to those parties to the controversy who have voluntarily submitted themselves to the authority of the church by connecting themselves with it. Therefore, where it is admitted, as in this case, that property belongs to a particular church, and the only question is whether the defendant claiming to be pastor should be excluded from its use, this Court will only consider whether the church has ordered his exclusion, not whether it was right in doing so. Neither will the Court as a civil tribunal undertake to determine whether the resolution directing exclusion was passed in accordance with the canon law of the church, except in so far as it may be necessary to do so in determining whether it was, in fact, the church that acted. .

The Morris Street Baptist Church being organized under the Baptist polity, its congregation is its governing body, and acts in entire independence of any other ecclesiastical authority. The congregation may for its own convenience

adopt such rules as it deems expedient, but a civil tribunal cannot in anywise hold it bound to follow these rules, except where the civil rights of other persons have become involved by such persons being led to deal with the church as a corporation, on the faith of its rules. Whenever the congregation meets as a church, it may expel members, depose its pastor, and dispose of its property in any way that it sees fit; and when a congregation has acted, the civil courts will not inquire whether in doing so it violated any of its own rules. The congregation being the sole legislative and judicial body of the Baptist Church, those who connect themselves with it, voluntarily assume the risk of the propriety and justice of congregational action, just as those who become Presbyterians or Episcopalians subject themselves in church affairs to the authority of synods and councils.

The only questions, then, we have power to consider are, did the congregation meet, and did it depose the defendant as pastor? If these questions are answered in the affirmative, then the defendant was properly enjoined from interfering with the church property. The action of the church is controlled by the vote of the majority of the congregation, assembled as a church, and it is quite obvious, a civil tribunal cannot regard the sentiment of the majority expressed in any other way.

The rules regularly adopted by this church contemplate that business affairs should be submitted to the congregation by a committee composed of eleven members, called the advisory board. These rules provided for a regular business meeting of the congregation on Thursday evening after the first Sunday of each month, but the advisory board or the pastor were authorized to call special meetings at other times. At the time this controversy arose, this board consisted of only nine members, two vacancies having occurred, and the church having taken no steps to fill them. On March 26th, 1902, six members of the board met, and, by a vote of four to two, passed a resolution to be submitted to the congregation, asking for the resignation of the defendant as

pastor within thirty days. We think the finding of the master and the Circuit Judge, that notice was given of the board meeting, and that announcement was made at a regular church service that a business meeting of the congregation would be held on Thursday, April 10th, is well supported by the evidence. But these matters are of no consequence, because the evening of Thursday, April 10th, was the regular time for the business meeting of the congregation, and when it assembled at that time, it represented the entire church. There was much disorder on this occasion, as might have been expected from the people of a highly emotional race, especially when the pastor unwarrantably undertook to interfere with their right to hold a church meeting; but there can be no doubt that the congregation at this regular meeting, by a majority vote of those present, passed the resolution requesting the resignation of the defendant after thirty days, which we think should be regarded as equivalent to his formal dismissal at the expiration of that time.

The appellant contends, however, that to hold this dismissal valid is to sanction conviction without the right of trial. As to this, it is only necessary to say that this was not a church trial, but simply a dismissal of a pastor; and even if it had been, a civil court has no power to require a church court to observe the usual incidents of trial, such as the formulation of charges and notice.

In view of the law on the subject as we have stated it, it seems unnecessary to decide which of the church directories discussed in argument was referred to as a church authority in the rules adopted by the Morris Street Baptist Church. Three editions of Hiscox's Directory were introduced in evidence. The plaintiff contends that the rules refer to the oldest edition, published in 1850, which states that a pastor may be dismissed by the congregation without notice. The defendant insists reference is made to another and smaller edition, published in 1890, which provides for three months notice before dismissal. Under the polity of the Baptist

Church, as stated in these manuals themselves, they cannot be regarded authority to control the congregation, but only as guides suggesting the usual and most approved course to pursue. But even if the manuals could be regarded binding on the church as constituting an element in a civil contract with the defendant as pastor, it will be observed the one in use when he assumed that relation to the church sixteen years ago, does not provide for notice, and the last, published in 1900, mentions the giving three months notice, as we understand it, merely as an almost universal custom. In any view there was, therefore, no legal obligation to give this notice before dismissal.

The defendant claims that even if it be conceded he was dismissed by the congregation on April 10th, 1902, this action was revoked at a meeting of the congregation held on April 17th, a week later. While it is true, as the master states, the rules specifically adopted by the church do not contemplate appeal from one church meeting to another, yet the congregation could waive, or disregard this rule, and reverse its former action; and hence, if there was a meeting for business purposes on April 17th, and the congregation annulled its former action and reinstated the defendant as pastor, he would still have a right to exercise such control of the church property as the nature of the office conferred upon him. The evening of the 17th day of April was the regular time of meeting for devotional service, but not for the transaction of business; and after a very careful review of much conflicting evidence, we are constrained to hold that no notice was given to the congregation that a business meeting would be held on that date. Some witnesses testify no notice was given; others say notice was given from the pulpit on the Sunday before of a meeting, but do not say the notice indicated a business meeting. Of the witnesses before the master, the defendant alone says explicitly he gave notice from the pulpit that the meeting would be for the transaction of business of the church. The defendant himself presided at this meeting and had charge of it, and the

preponderance of the evidence indicates that there was no real ascertainment by vote of the sentiment of those who were present.

We conclude that the defendant was deposed by a majority vote at a regular meeting of the congregation of the Morris Street Baptist Church, held on April 10th, 1902; that this action has not been revoked, and that defendant had no right to use or interfere with any of the church property.

In the report of the master, which is confirmed by the Circuit Judge, it is found: "The plaintiffs have possession of the charter, the records and the keys of the church. Among their number are the clerk, the sexton and the treasurer of the church and a large majority of the advisory board." This finding of fact is not drawn in question by the exceptions. Taking these facts in connection with the conclusion we have reached, that the defendant was excluded from the pastorate of the church by the vote of the congregation, it follows that this action was properly instituted, without any direct instruction from the congregation, by officers and members in behalf of, and in the name of the church, to prevent violent and illegal interference with its property.   6 Thompson on Corporations, sec. 7374.

The church did not make the dismissal conditional on payment of arrears of salary.   While a church is liable to suit by a pastor for arrears of salary it contracted to pay, it is not a condition precedent to his deposition that he should be paid in full.   The amount due the defendant not being in anywise involved in this action, the Circuit Court could not properly direct the costs of this suit to be set off against his salary.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.