Reverend Arcadio NATAL, et al.,
Plaintiffs, Appellants,

v.

The CHRISTIAN AND MISSIONARY ALLIANCE, Defendant, Appellee.

No. 89–1242.

United States Court of Appeals,
First Circuit.

Submitted June 30, 1989.
Decided July 14, 1989.

Nicholas Delgado Figueroa Santurce, on brief, for plaintiffs, appellants.

Pedro J. Santa–Sanchez, Carla Garcia–Benitez and O'Neill & Borges, Hato Rey, P.R., on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BOWNES and SELYA, Circuit Judges.

SELYA, Circuit Judge.

The First Amendment to the Constitution of the United States provides in part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." This appeal

tests the reach of the Free Exercise Clause and calls upon us to explore the tension between the Clause and the rights of a minister *qua* employee.

## I

Reverend Arcadio Natal, a clergyman, and his wife, Mary Beatriz Padilla, filed suit in federal district court against a not-for-profit religious corporation, the Christian and Missionary Alliance ("CMA" or "Church"). In their thirty-three paragraph complaint, plaintiffs alleged that CMA was a hierarchical, "highly centralized" organization with a "worldwide ministry"; that Natal, an ordained minister, had devoted forty years to the Church's service, the last twenty of which had been spent as pastor in Manati, Puerto Rico; that the Church utilized set procedures for institutional governance, articulated in its General Constitution, certain Auxiliary Constitutions, and a variety of bylaws, rules, and regulations; and that, in total disregard of these elaborate prophylactic mechanisms, the Church unceremoniously discharged the pastor. In consequence, Natal's property and contract rights were mutilated, his reputation tarnished, and his emotional health ruined. Natal sought, *inter alia*, reinstatement, backpay, $1,000,000 in compensatory damages, and punitive damages without limit of amount. Padilla joined in her husband's allegations (their complaint was not divided into separate counts), claimed to have been "affected emotionally" by what transpired, and sought damages of $200,000 "for losses of business and mental anguish."

CMA filed a motion to dismiss plaintiffs' complaint, invoking Fed.R.Civ.P. 12(b)(6). Following plethoric briefing, the district court took the matter under advisement. Thereafter, the court granted defendant's motion. *Natal v. Christian and Missionary Alliance*, 1988 WL 159169 (D.P.R. 1988). Plaintiffs unsuccessfully requested reconsideration, and now appeal.

## II

In considering a Rule 12(b)(6) motion, the district court must

accept the well-pleaded factual averments of the ... complaint as true, and construe these facts in the light most flattering to the plaintiffs' cause ... exempt[ing], of course, those "facts" which have since been conclusively contradicted by plaintiffs' concessions or otherwise, and likewise eschew[ing] any reliance on bald assertions, unsupportable conclusions, and "opprobrious epithets."

*Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.); *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987) (citations omitted). The motion should be granted only if, so viewed, the pleading limns no set of facts which might entitle plaintiffs to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed. 2d 80 (1957). The criteria are liberal. Nevertheless, "[t]he court need not conjure up unpled allegations or contrive elaborately arcane scripts" in order to sustain a complaint's sufficiency. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

## III

We need not linger long over the assignments of error. The district court's opinion is a scholarly piece of work, squarely addressing and ably refuting the very arguments which plaintiffs advance in their brief on appeal. In our judgment, little would be gained by longiloquent appellate reiteration of the pivotal points. Accordingly, we affirm the dismissal of plaintiffs' action for substantially the reasons set forth in the opinion below. We do, however, add a few words in augmentation of the district court's statements.

## A

As to plaintiffs' principal claims, we deem it beyond peradventure that civil courts cannot adjudicate disputes turning on church policy and administration or on religious doctrine and practice. *See, e.g., Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 708–09, 96 S.Ct. 2372, 2380, 49 L.Ed.2d 151 (1976); *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393

U.S. 440, 446–47, 89 S.Ct. 601, 604–05, 21 L.Ed.2d 658 (1969); *Kedroff v. St. Nicholas Cathedral,* 344 U.S. 94, 114–16, 73 S.Ct. 143, 153–55, 97 L.Ed. 120 (1952); *Gonzalez v. Roman Catholic Archbishop,* 280 U.S. 1, 16, 50 S.Ct. 5, 7–8, 74 L.Ed. 131 (1929); *Watson v. Jones,* 80 U.S. (13 Wall.) 679, 726–32, 20 L.Ed. 666 (1871); *see also NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979); *New York v. Cathedral Academy,* 434 U.S. 125, 98 S.Ct. 340, 54 L.Ed.2d 346 (1977). The principle is an important one, steeped in our tradition as well as in our jurisprudence. In the last analysis, the dispute which underlies plaintiffs' complaint treads heavily on this forbidden terrain.

Plaintiffs' effort to distinguish the long line of precedents on the ground that the Church in this case failed to follow its own rules, thereby denying the pastor "due process," is unavailing. We look to the substance and effect of plaintiffs' complaint, not its emblemata. Howsoever a suit may be labelled, once a court is called upon to probe into a religious body's selection and retention of clergymen, the First Amendment is implicated. We agree entirely with the Fifth Circuit that:

> The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern.

*McClure v. Salvation Army,* 460 F.2d 553, 558–59 (5th Cir.), *cert. denied,* 409 U.S. 896, 93 S.Ct. 132, 34 L.Ed.2d 153 (1972); *see also Hutchison v. Thomas,* 789 F.2d 392, 396 (6th Cir.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986); *Kaufmann v. Sheehan,* 707 F.2d 355, 358–59 (8th Cir.1983); *Simpson v. Wells Lamont Corp.,* 494 F.2d 490, 493 (5th Cir. 1974); *Minker v. Baltimore Annual Conf., United Methodist Church,* 699 F.Supp. 954, 955 (D.D.C.1988); *cf. Dowd v. Society of St. Columbans,* 861 F.2d 761, 764 (1st Cir.1988) (per curiam) (involving priest's "membership rights" claim against missionary society).

Natal's assertion that his case involves "property rights" is true, but he posits it in a way which obscures the ineluctable conclusion. Where, as here, a cleric's property dispute with his church is "made to turn on the resolution ... of controversies over religious doctrine and practice," *Presbyterian Church,* 393 U.S. at 449, 89 S.Ct. at 606, judicial intervention comprises impermissible entanglement in the church's affairs. *See, e.g., Serbian Eastern Orthodox Diocese,* 426 U.S. at 708–09, 96 S.Ct. at 2380; *Hutchison,* 789 F.2d at 396; *see also Jones v. Wolf,* 443 U.S. 595, 602, 99 S.Ct. 3020, 3024–25, 61 L.Ed.2d 775 (1979) ("the First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice").

Plaintiffs' contention that federal or state labor statutes require a different result is likewise foreclosed by the weight of authority. *See, e.g., Rayburn v. General Conf. of Seventh–Day Adventists,* 772 F.2d 1164, 1167–69 (4th Cir.1985), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986) (Free Exercise Clause bars Title VII suit by minister against church); *McClure,* 460 F.2d at 558–61 (same); *Minker,* 699 F.Supp. at 955 (age discrimination action cannot be maintained by pastor against church).

At bottom, Natal's complaint directly involves, and would require judicial intrusion into, rules, policies, and decisions which are unmistakably of ecclesiastical cognizance. They are, therefore, not the federal courts' concern. As we recently wrote:

> The [Church's] own internal guidelines and procedures must be allowed to dictate what its obligations to its members are without being subject to court intervention. It is well-settled that religious controversies are not the proper subject of civil court inquiry. Religious bodies must be free to decide for themselves, free from state interference, matters which pertain to church government, faith and doctrine.

*Dowd,* 861 F.2d at 764 (citations omitted).

### B

As to the claim of coplaintiff Mary Beatriz Padilla, little need be said. The sole

substantive reference to Padilla in plaintiffs' complaint was contained in paragraph 25, as follows:

Plaintiff wife who owned a religious bookstore in a building annexed to the church, was asked by defendant through the superintendent to evict the building, causing losses to the business and mental anguish to her.

We agree with the district court that this "vague averment" is devoid of any indication that the charged conduct was unlawful or otherwise actionable. To be sure, Rule 12(b)(6) imposes only slight demands on claimants—but "minimal requirements are not tantamount to nonexistent requirements." *Gooley*, 851 F.2d at 514. Empty generalities will not suffice:

Modern notions of "notice pleading" notwithstanding, a plaintiff, we think, is nonetheless required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.

*Id.* at 515. To permit Padilla to drag CMA over the pleading threshold by virtue of so grazing an impingence as the single oblique reference contained in the instant complaint would open floodgates best kept shut.[1]

## IV

We, like plaintiffs, are obligated to accept the Church's decisions "on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law." *Serbian Eastern Orthodox Diocese*, 426 U.S. at 713, 96 S.Ct. at 2382. Because of the difficulties inherent in separating the message from the messenger—a religious organization's fate is inextricably bound up with those whom it entrusts with the responsibilities of preaching its word and ministering to its adherents—Natal's case necessarily falls within the scope of the Court's monition. By its very nature, the inquiry which Natal would have us undertake into the circumstances of his discharge plunges

an inquisitor into a maelstrom of Church policy, administration, and governance. It is an inquiry barred by the Free Exercise Clause. For this reason, and because the coplaintiff has also failed to state an actionable claim, the decision and judgment below must be

*Affirmed.*

---

1. Because Padilla failed to state a claim *at all,* we need not reach—and express no opinion on—the matter of whether, and/or to what extent, litigation between Padilla and the Church, derivative of Natal's dispute with CMA, might implicate the First Amendment.