**Elizabeth J. BURGESS, Plaintiff,**

v.

**ROCK CREEK BAPTIST CHURCH, et al., Defendants.**

**Civ. A. No. 88–1134 (CRR).**

United States District Court, District of Columbia.

April 2, 1990.

William E. Nelson and Sherlee Stanford Nelson of Nelson & Nelson, Washington, D.C., for plaintiff.

William P. Lightfoot of Koonz, McKenney & Johnson, Washington, D.C., for defendants.

### MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Before the Court is "what the courts have recognized as the most intractable of disputes—a church fight." *First Baptist Church v. Ohio,* 591 F.Supp. 676, 680–81 (S.D.Ohio 1983). The central issue in this lawsuit by a "lifelong" Rock Creek Baptist Church ("RCB Church") member against RCB Church (as well as its Pastor and its Secretary) is whether the plaintiff is a member of RCB Church. In response to the defendants' decision to terminate her membership, the plaintiff sued for declaratory and injunctive relief (to establish that

she is an RCB Church member in good standing) and for damages for the defendants' alleged intentional infliction of emotional distress in terminating her membership and treating her as a non-member. The Court will grant summary judgment for the defendants,[1] because the First Amendment to the Constitution precludes civil courts from adjudicating disputes involving matters of ecclesiastical cognizance.

## I. Factual Background

Before this lawsuit commenced, the plaintiff had been an RCB Church member for about forty years. During that period she served in various capacities and participated extensively in RCB Church activities. In 1984 the RCB Church minister departed, and the plaintiff and several other RCB Church members assisted him in becoming established in a new church. RCB Church's new Pastor and the Secretary construed the plaintiff's actions in assisting the former minister as a resignation of her membership and decided to transfer her membership to the new church. However, the plaintiff maintains that she was merely helping a friend and neither intended to resign from RCB Church nor requested a transfer to another church.

In any event, resolving this factual dispute in the plaintiff's favor for the purposes of this motion, the defendants terminated the plaintiff's RCB Church membership against her will. Having terminated her membership, the defendants treated the plaintiff as a non-member, refusing to allow her to vote in church elections, seeking to bar her from attending church meetings, and refusing to accept her dues payment as anything other than a public non-membership donation. In response to inquiries about her membership status, the RCB Church Pastor sent the plaintiff a letter dated November 25, 1986 listing four ways for the plaintiff to regain her membership. However, the record indicates that the plaintiff has not pursued any of these options.

RCB Church, a congregational church, is a District of Columbia corporation, and the other two defendants are District of Columbia residents. The plaintiff, a Maryland resident, invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

## II. Analysis

■ A consequence of this Nation's fundamental belief in the separation of church and state is that, under most circumstances, the First and Fourteenth Amendments preclude civil courts from adjudicating church fights that require extensive inquiry into matters of "ecclesiastical cognizance." *See Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 708–11, 96 S.Ct. 2372, 2380–81, 49 L.Ed.2d 151 (1976).[2] A civil court presiding over church disputes must be particularly careful not to violate the Free Exercise and Establishment Clauses by ruling against one party and for the other party based on the court's resolution of the underlying controversy over religious doctrine and practice. *See Presbyterian Church v. Mary Elizabeth Blue Hull Mem. Presbyterian Church*, 393 U.S. 440, 449, 89 S.Ct. 601, 606, 21 L.Ed.2d 658 (1969).

1. Because the parties have submitted, and the Court has considered, matters outside the pleadings, the Court will treat the defendants' motion to dismiss as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b).

2. The Court recognizes that *Milivojevich* and most of the other cases cited in this Memorandum Opinion involve hierarchical churches, whereas the defendant RCB Church is a congregational church. However, there is a dearth of federal case law on whether civil courts should hear lawsuits in which a congregational church is a party. In any event, the Court can discern no justification for refusing to apply the First Amendment analysis and reasoning of Supreme Court and lower federal court case law involving hierarchical churches to this case. *See First Baptist Church v. Ohio*, 591 F.Supp. 676, 682 (S.D.Ohio 1983) ("because the 'hands off' policy espoused by the [*Milivojevich*] Court is of constitutional dimension, we find it difficult to justify the application of a different standard where a congregational church is involved"); *Nunn v. Black*, 506 F.Supp. 444, 448 (W.D.Va.) (applying *Milivojevich* rule and refusing to adjudicate church dispute even though church had "no structured decision-making process"), *aff'd*, 661 F.2d 925 (4th Cir.1981), *cert. denied*, 454 U.S. 1146, 102 S.Ct. 1008, 71 L.Ed.2d 299 (1982).

■ Although every lawsuit in which a church is a party involves ecclesiastical matters to some degree, under certain narrow circumstances it is appropriate for a court to adjudicate a church fight. First, a court may decide such a dispute if it can do so without becoming unduly entangled in matters of ecclesiastical cognizance. As the Supreme Court has made clear, "[e]ven when rival church factions seek resolution of a church property dispute in the civil courts there is substantial danger that the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs." *Milivojevich*, 426 U.S. at 709, 96 S.Ct. at 2380; *see Crowder v. Southern Baptist Convention*, 828 F.2d 718, 722 (11th Cir.1987) (footnote omitted) ("where the method of resolution of the controversy avoids excessively entangling the judiciary in questions of ecclesiastical doctrine or belief, the first amendment might permit a court to adjudicate the matter"), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). Moreover, the First Amendment "commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine." *Presbyterian Church*, 393 U.S. at 449, 89 S.Ct. at 606. This principle is particularly relevant to the instant case because it governs not only church fights over property but *"applies with equal force to church disputes over church polity and church administration."* *Milivojevich*, 426 U.S. at 710, 96 S.Ct. at 2381 (emphasis added).

A natural outgrowth of these non-entanglement concerns is the so-called "neutral principles" doctrine. In *Jones v. Wolf*, 443 U.S. 595, 604, 99 S.Ct. 3020, 3026, 61 L.Ed.2d 775 (1979), the Supreme Court held that "a State is constitutionally entitled to adopt neutral principles of law as a means of adjudicating a church property dispute." The *Wolf* Court noted that the primary advantages of this approach "are that it is completely secular in operation, and yet flexible enough to accommodate all forms of religious organization and polity," adding that this "method relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges." *Id.* at 603, 99 S.Ct. at 3025. However, in this case involving the plaintiff's entitlement to continued church membership, her reliance on the neutral principles doctrine is misplaced. As the *Wolf* Court's language quoted above demonstrates, this approach applies only to church *property* disputes. *See also Presbyterian Church*, 393 U.S. at 449, 89 S.Ct. at 606 ("there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded"); *Hutchison v. Thomas*, 789 F.2d 392, 396 (6th Cir.) ("The 'neutral principles' doctrine has never been extended to religious controversies in the areas of church government, order and discipline, nor should it be."), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986). Thus, this Court may not utilize the neutral principles doctrine to resolve this membership dispute.

■ Another narrow circumstance in which at least "marginal civil court review" of a church dispute *might* be appropriate is if the decision of a proper church tribunal is the product of fraud or collusion. *See, e.g., Milivojevich*, 426 U.S. at 712, 96 S.Ct. at 2381 (citing *Gonzalez v. Roman Catholic Archbishop*, 280 U.S. 1, 16, 50 S.Ct. 5, 7, 74 L.Ed. 131 (1929) (dictum)); *Presbyterian Church*, 393 U.S. at 447, 89 S.Ct. at 605 (same).[3] However, assuming without deciding that a fraud or collusion exception exists, it is inapposite here because even a liberal reading of the plaintiff's Amended Complaint does not reveal allegations of fraud or collusion against the defendants.

In addition to fraud and collusion, the *Gonzalez* dictum included arbitrariness as an exception to the judiciary's "hands off" policy in cases involving matters of ecclesi-

---

**3.** As the Sixth Circuit noted, the Supreme Court has never definitively endorsed a fraud or collusion exception, but has merely left the issue open as a possibility for later consideration.

*See Hutchison v. Thomas*, 789 F.2d 392, 395 (6th Cir.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986).

astical cognizance. *See Gonzalez*, 280 U.S. at 16, 50 S.Ct. at 7. However, in 1976 the Supreme Court, while not foreclosing civil court review "under the narrow rubrics of 'fraud' or 'collusion,'" specifically overruled this arbitrariness prong of the exception. *Milivojevich*, 426 U.S. at 713, 96 S.Ct. at 2382; *see Kaufmann v. Sheehan*, 707 F.2d 355, 358 (8th Cir.1983). Holding that "recognition of ... an [arbitrariness] exception would undermine the general rule that religious controversies are not the proper subject of civil court inquiry," *Milivojevich*, 426 U.S. at 713, 96 S.Ct. at 2382, the Court noted:

> Indeed, it is the essence of religious faith that ecclesiastical decisions are reached and are to be accepted as matters of faith whether or not rational or measurable by objective criteria. Constitutional concepts of due process, involving secular notions of 'fundamental fairness' or impermissible objectives, are therefore hardly relevant to such matters of ecclesiastical cognizance.

*Id.* at 714–15, 96 S.Ct. at 2383. Consequently, if the defendants' decision to terminate the plaintiff's membership was a matter of ecclesiastical cognizance, the First Amendment and Supreme Court case law preclude this Court from acting upon the plaintiff's allegation that the defendants "arbitrarily and capriciously" deprived her of her RCB Church membership.

█ The record before the Court indicates that the question of determining who is and who is not a member of the RCB Church is a matter of ecclesiastical cognizance. Article III, § 1 of the RCB Church Constitution states that "[t]he membership of this Church shall consist of such persons who have exemplified any of the following qualifications: (a) Confess Jesus Christ as their Savior and Lord and having been baptized in the name of the Father, Son and Holy Ghost (b) By Christian experience (c) By letter from a former church." Defendants' Motion for Summary Judgment, Exhibit 5. With the exception of the third option which is not relevant here, the Court cannot posit any criterion for membership that could more directly implicate ecclesiastical considerations protected by the First Amendment than the first two qualifications. *Compare Minker v. Baltimore Annual Conference of United Methodist Church*, 894 F.2d 1354, 1358–59 (D.C.Cir. 1990) (refusing to exercise jurisdiction over plaintiff's contract claim against church because court would have to analyze ecclesiastical matters, such as appointment and antidiscrimination provisions of church's Book of Discipline and "gifts and graces" element of minister's occupational qualification). In addition, the church constitution, Art. III, § 2, also addresses RCB Church members' duties in ecclesiastical terms: "Members are expected, first of all, to be faithful in all the duties essential to the christian life."

While the religious principles that a church espouses and the minister or priest and other officials who "govern" are certainly important, an indispensable part of any church is the collection of individuals who have joined together in worship and constitute the church's membership. For essentially the same reasons that courts have refused to interfere with the basic ecclesiastical decision of choosing the minister or priest of a church, *see, e.g., Minker*, 894 F.2d at 1356–57; *Natal v. Christian & Missionary Alliance*, 878 F.2d 1575, 1576–77 (1st Cir.1989); *Hutchison v. Thomas*, 789 F.2d 392, 393, 396 (6th Cir.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986); *Kaufmann v. Sheehan*, 707 F.2d 355, 358–59 (8th Cir.1983), this Court must not interfere with the fundamental ecclesiastical concern of determining who is and who is not an RCB Church member. "The mere expulsion from a religious society, with the exclusion from a religious community, is not a harm for which courts can grant a remedy." *Grunwald v. Bornfreund*, 696 F.Supp. 838, 840–41 (E.D.N.Y.1988). Slightly paraphrased, the language of the First Circuit, facing an analogous issue, is particularly relevant to this case:

> To the extent that [the plaintiff's lawsuit] pertain[s] to [her] perception of the ... obligations of [RCB Church] to [her] as a member, [the] defendant[s] correctly assert[ ] that [this suit] involve[s] rules,

policies and decisions which should be left to the exclusive religious jurisdiction of [RCB Church]. *[RCB Church's] own internal guidelines and procedures must be allowed to dictate what its obligations to its members are without being subject to court intervention.* It is well-settled that religious controversies are not the proper subject of civil court inquiry. *Religious bodies must be free to decide for themselves, free from state interference, matters which pertain to church government, faith and doctrine.* Dowd v. Society of St. Columbans, 861 F.2d 761, 764 (1st Cir.1988) (emphasis added; citations omitted).

In short, the Court is precluded from reviewing the fairness or correctness of the defendants' decision to terminate the plaintiff's membership. "By its very nature, the inquiry which [the plaintiff] would have [the Court] undertake into the circumstances of [her termination] plunges an inquisitor into a maelstrom of Church policy, administration, and governance. It is an inquiry barred by the Free Exercise Clause." *Natal*, 878 F.2d at 1578. As discussed above, this holds true even assuming *arguendo* that the termination was a simple mistake or was arbitrary and not in accordance with the procedures set out in the RCB Church Constitution. *See Milivojevich*, 426 U.S. at 713, 96 S.Ct. at 2382.

The First Amendment cloak that protects the ecclesiastical decision to terminate the plaintiff's membership (for which Count I seeks declaratory and injunctive relief) extends as well to the defendants' additional actions in treating the plaintiff as a non-member (for which Count II seeks $50,000 damages on the theory of intentional infliction of emotional distress). As an initial matter, it is not surprising, let alone "outrageous," in the Court's view, for a church to prevent an individual, who is not a member of the church, from voting in church elections, attending church meetings, and paying membership dues. In any event, the defendants' decision to terminate the plaintiff's RCB Church membership and their subsequent actions are so inextricably linked that—regardless of the legal theories upon which the plaintiff relies—for the purposes of the First Amendment analysis, the substance of her lawsuit infringes upon matters of ecclesiastical cognizance. As one appeals court stated succinctly in a similar context: "We look to the substance and effect of plaintiffs' complaint, not to its emblemata. Howsoever a suit may be labelled, once a court is called upon to probe into a religious body's selection and retention of clergymen, the First Amendment is implicated." *Natal*, 878 F.2d at 1577. Thus, assuming *without deciding* that the plaintiff's allegations would otherwise make out a *prima facie* case against the defendants for intentional infliction of emotional distress, the defendants' actions are privileged under the First Amendment. *See Paul v. Watchtower Bible & Tract Soc'y*, 819 F.2d 875, 879–883 (9th Cir.) (even if conduct was tortious, Jehovah's Witnesses' "shunning" of disassociated member was part of church's policy and was a privileged religious practice under First Amendment), *cert. denied*, 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987).

### III. Conclusion

RCB Church's membership qualifications are so close to the core of ecclesiastical concern that "[i]n the last analysis, the dispute which underlies plaintiff['s] complaint treads heavily on ... forbidden terrain." *Natal*, 878 F.2d at 1577. The fundamental First Amendment principle of separation of church and state compels the Court to decline to adjudicate the plaintiff's claims.[4] "The constitutional guarantee of the free exercise of religion requires that

---

4. Even if this dispute were appropriate for resolution by a civil court, the Court would grant summary judgment because the plaintiff has not demonstrated that she has even attempted to pursue any of the four alternatives for regaining membership that the defendants provided her. *See* Defendants' Motion for Summary Judgment, Exhibit 4 (November 25, 1986 Letter from Reverend Grandison to plaintiff). A church member attacking a church decision may not obtain civil court review of that decision without first exhausting the church's internal appeal procedures. *See Milivojevich*, 426 U.S. at 710–11, 96 S.Ct. at 2381; *First Baptist Church v. Ohio*, 591 F.Supp. 676, 683 (S.D.Ohio 1983).

society tolerate the type of harms suffered by [the plaintiff] as a price well worth paying to safeguard the right of religious difference that all citizens enjoy." *Watchtower Bible & Tract Soc'y*, 819 F.2d at 884. Thus, the defendants' summary judgment motion must be granted.

An Order in accordance with the foregoing Memorandum Opinion will be issued of even date herewith.