750 S.E.2d 605

**Ira BANKS, James Bell and Vernon Holmes, Respondents,**

v.

**ST. MATTHEW BAPTIST CHURCH, an Unincorporated Association, and Clinton Brantley, of whom Clinton Brantley is the, Petitioner.**

**Appellate Case No. 2011–188006.**

**No. 27317.**

Supreme Court of South Carolina.

Heard Oct. 2, 2012.
Decided Sept. 25, 2013.
Rehearing Denied Dec. 5, 2013.

P. Gunnar Nistad and Helen F. Hiser, of Mt. Pleasant, and Weston Adams, III, of Columbia, all of McAngus Goudelock & Courie, LLC, for Petitioner.

Thomas O. Sanders, IV, of Sanders Law Firm, LLC, of Charleston, for Respondents.

Justice HEARN.

In this case we must decide whether a pastor may use the First Amendment's Free Exercise Clause to shield him from tort liability for allegedly defamatory statements he made about the church's trustees at a congregational meeting. While the pastor acknowledges the non-religious nature of his statements, he contends the setting in which they were made and their relationship to church governance places the trustees' defamation claim outside the jurisdiction of civil courts under the First Amendment. The circuit court dismissed the claim, and the court of appeals reversed. We hold the circuit court had jurisdiction to resolve this defamation claim using neutral principles of law and affirm the court of appeals.

## FACTUAL/PROCEDURAL BACKGROUND

Petitioner Clinton Brantley was the pastor of St. Matthew Baptist Church (the Church) in North Charleston. Respondents Ira Banks, James Bell, and Vernon Holmes (the Trustees) served as trustees of the Church. At a congregational meeting, Brantley stated that without his knowledge, the Trustees had placed a mortgage upon the Church's property

in order to purchase apartment buildings nearby. He further stated the Trustees failed to insure the apartment buildings and that funds were missing because of their mismanagement. Finally, he stated the Trustees had constantly deceived him. He urged the congregation to remove the Trustees from their position, and the congregation subsequently did so.

The Trustees filed this suit asserting causes of action for defamation, negligence, and intentional infliction of emotional distress against Brantley as well as a negligence cause of action against the Church. Specifically, the complaint alleged the statements Brantley made about the Trustees at the congregational meeting were false and defamatory.

Brantley and the Church both moved to dismiss the case for lack of subject-matter jurisdiction because due to the religious nature of the claims, the First Amendment barred the court from hearing the case. The circuit court granted both motions to dismiss, reasoning:

> The Court finds that according to the pleadings any alleged defamatory statements were made during the course of a congregational meeting where the [Trustees] continuing to serve as Trustees of the church was being discussed. The Court finds that it is not appropriate for it to intervene in such a church matter and that the Court does not have jurisdiction to intervene.

The court of appeals affirmed the dismissal of all of the claims, with the exception of the defamation claim which it reversed. *Banks v. St. Matthew Baptist Church*, 391 S.C. 475, 706 S.E.2d 30 (2011). Applying the neutral principles of law approach, the court of appeals concluded the defamation claim could be decided without ruling on religious matters, stating:

> Here, the Trustee's [sic] defamation claim can be resolved using solely legal principles without examining any religious questions.... In the present case, the court would not need to look at the Church's beliefs to determine if the statements constitute defamation. Accordingly, the trial court erred in dismissing the defamation cause of action.

*Id.* at 481–82, 706 S.E.2d at 33. This Court granted certiorari to review the reversal of the circuit court's dismissal of the defamation claim.

## LAW/ANALYSIS

█ Brantley argues the court of appeals erred in holding the defamation claim could be resolved using neutral principles of law because resolution of the claim would permit a civil court to interfere with issues of internal church governance and administration. Brantley characterizes the defamation claim as a matter of church governance because his statements were made during a congregational meeting discussing church business. Contrary to Brantley's assertions, we hold the defamation clause of action falls squarely within the realm of claims susceptible to the neutral principles of law approach because adjudication of the claim would not require any consideration of religious doctrine or governance. Accordingly, we agree with the well-reasoned decision of the court of appeals and affirm.

█ In accordance with our constitutional freedom of religion and corresponding separation of church and state enshrined in the First Amendment to the United States Constitution,[1] religious organizations must be given "an independence from secular control or manipulation, in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116, 73 S.Ct. 143, 97 L.Ed. 120 (1952). To put that principle into practice, we have held that civil courts "may not engage in resolving disputes as to religious law, principle, doctrine, discipline, custom, or administration." *Pearson v. Church of God*, 325 S.C. 45, 52, 478 S.E.2d 849, 853 (1996). However, we recognized that civil courts may hear cases touching upon religious organizations where the dispute may be resolved entirely by neutral principles of law. *See id.* at 51–53, 478 S.E.2d at 852–53. Under the neutral principles of law approach, courts may apply "property, corporate, and other forms of law to church disputes." *All Saints Parish Waccamaw v. Protestant Episcopal Church in Diocese of S.C.*, 385 S.C. 428, 444, 685 S.E.2d

---

1. The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; . . . ." U.S. Const. amend. I. The amendment applies to the states through the Fourteenth Amendment's Due Process Clause. *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

163, 172 (2009). In other words, so long as a court can hear a case without deciding issues of religious law, principle, doctrine, discipline, custom, or administration, the court must entertain jurisdiction. *Id.*

■■■ The tort of defamation permits a plaintiff to recover for an injury to his reputation caused by the false statements of another. To prove defamation, a plaintiff must show "(1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Erickson v. Jones St. Publishers, LLC*, 368 S.C. 444, 464, 629 S.E.2d 653, 664 (2006).

The allegations in this case are relatively straightforward. Brantley allegedly made statements in a church meeting that the Trustees failed to inform him of a mortgage on church property, failed to insure church property, mismanaged—and impliedly stole—the Church's money, as well as lied to him. The Trustees allege those statements were false and harmed them. As a result, the Trustees brought a defamation claim against Brantley.

The statements allegedly made by Brantley are all simple declarative statements about the actions of the Trustees. The truth or falsity of such statements can easily be ascertained by a court without any consideration of religious issues or doctrines. The pastor admitted in his answer that he made statements concerning the Trustees at a congregational meeting. Thus, the pastor admits he made statements to a third party—the congregation—and the only issue as to that element is whether the pastor made the particular statements alleged by the Trustees. Determining whether the statements were made would not require consideration of any religious issues. As to the actionability of the statements, whether the statements harmed the Trustees' reputations would not require delving into religious issues. Thus, adjudication of the defamation claim would not require any inquiry into or resolution of religious law, principle, doctrine, discipline, custom, or administration.

The only aspect of the Trustees' defamation claim that could be characterized as religious is that the statements were made

in a church meeting—a religious setting—in which church governance was discussed. That seems to be the essence of the circuit court's holding and the core of Brantley's arguments before this Court: because the statements were made in a "congregational meeting where the [Trustees] continuing to serve as Trustees of the Church was being discussed," they are outside the bounds of the neutral principles of law approach.

We cannot allow the setting in which the statements were made to defeat the jurisdiction of the circuit court where the claim is susceptible to resolution through neutral principles of law. Certainly a defamation claim based on a man making similar statements from a soapbox on the street corner would be within the court's jurisdiction. Defamation is a tort, and the situs of that tort should not dictate the jurisdiction to adjudicate it. Had Brantley physically struck the Trustees in the meeting, we would not hold that a resulting battery claim could not be decided by a civil court because the tort occurred in a church meeting. Similarly, if the Trustees had embezzled money from the Church, we would not hold that the Church could not bring an action in civil court against the Trustees because the funds were taken in the context of church governance. In short, a tortfeasor is not shielded from liability simply by committing his torts within the walls of a church or under the guise of church governance.

The contours of the neutral principles of law approach in this context and the susceptibility of the defamation claim to that approach are perhaps best illuminated by considering a defamation claim that would *not* be subject to the approach. Had the pastor stated that the Trustees were sinners, were not true followers of God, or had violated church law, the resulting defamation claim would not be susceptible to resolution through the neutral principles approach because to adjudicate the claim would require a civil court to wade into church doctrine and governance. However, the case before us does not present such a situation. Here, Brantley's statements, although made in a religious setting, are independent of religious doctrine or governance, and thus, whether they constitute defamation can be decided in a civil court of law.

## CONCLUSION

The neutral principles of law approach provides a workable framework to distinguish between the areas in which religious organizations and their members must have autonomy in order to ensure freedom of religion and those areas in which they are subject to the civil law like all other individuals. Based on the pleadings before us, this case falls squarely within the class of cases susceptible to resolution through the neutral principles of law approach. To find otherwise would be to grant tort law immunity to religious practitioners, enabling them to make any statement regardless of its falsity and harmfulness provided the statement is made in a religious setting. The First Amendment does not require such a result. Accordingly, we affirm.

PLEICONES and BEATTY, JJ., concur.

TOAL, C.J., dissenting in a separate opinion in which KITTREDGE, J., concurs.

Chief Justice TOAL.

I respectfully dissent. I would reverse the court of appeals' decision holding that the circuit court should have exercised jurisdiction over the Trustees' defamation claim against Brantley.

At the time of the events in question, the Trustees were members of the Board of Trustees (the Board) at the Church, an independent Baptist Church. According to its constitution, governance of the Church "is vested in the body of believers who compose it." As a "sovereign and democratic Baptist church," the "membership retains unto itself the exclusive right of self-government in all phases of the spiritual and temporal life of the church." The congregation's powers include the selection and removal of trustees from its Board. The Church's constitution further provides that trustees are officers of the Church. As officers of the Church, the trustees are responsible for the management of the Church's assets and, as Trustee Holmes testified, for "support[ing] ... the spiritual ministry of the [C]hurch."

In 2000, the South Carolina Department of Transportation purchased the Church's former location to make way for the

construction of the Arthur J. Ravenel Bridge. The Church relocated, and shortly thereafter made a decision to purchase adjacent properties in an attempt to expand its influence in its new neighborhood. The Board sought and obtained approval from the congregation to purchase an adjacent apartment complex. The Board financed the purchase with a $300,000 mortgage on the Church's property.

The Church owned the apartment complex for some time without incident. However, a disgruntled tenant set fire to an apartment causing damage to seven other rental units. After the fire, it was discovered that the Church did not have insurance on the apartment building, and that the Board used the Church's property as collateral for the loan.

Upon this discovery, the working relationship between Brantley and the Trustees deteriorated, and the Pastor subsequently sought the Trustees' removal from the Board in a quarterly congregational meeting on May 22, 2006. It is during this meeting that the Trustees claim Brantley defamed them. More specifically, the Trustees claim the Pastor made false statements that he was unaware the Trustees placed a $300,000 mortgage on the Church's property and failed to insure the complex, that the Trustees mismanaged the Church's money,[2] that money was missing, and that the Trustees "constantly" deceived Brantley throughout the purchase process. A motion was made to remove the Trustees from their positions on the Board, and a majority of the congregation voted to remove the Trustees.

Internal disputes among members of a church present some of the most difficult questions involving the limits of governmental intrusion into the religious affairs of its citizens. *Knotts v. Williams*, 319 S.C. 473, 476, 462 S.E.2d 288, 290 (1995). Freedom of religion is among the most fundamental of the guarantees of liberty contained in the Bill of Rights. U.S. Const. amend. I; *see also* S.C. Const. art. I, § 2. To preserve and foster this most cherished of freedoms, federal and state governments chose a constitutional prohibition against governmental interference with its citizens' free exercise of religious belief. *See, e.g., Knotts*, 319 S.C. at 477, 462 S.E.2d at 290

---

**2.** A June 2006 audit of the Church finances did not uncover any mismanagement of funds or wrongdoing.

(noting the "maintenance of governmental neutrality in the court resolution of church disputes has been the consistent and dominant theme of the South Carolina cases in this area."). This Court has consistently stated that "civil courts will not enter into the consideration of church doctrine or church discipline, nor will they inquire into the regularity of the proceedings of the church judicatories having cognizance of such matters." *Pearson*, 325 S.C. at 51–52, 478 S.E.2d at 852 (quoting *Morris St. Baptist Church v. Dart*, 67 S.C. 338, 341–42, 45 S.E. 753, 754 (1903)).

However, in *Jones v. Wolf*, 443 U.S. 595, 603, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979), the United States Supreme Court expressly approved the use of the neutral principles of law approach to resolve church disputes. This method "relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges." *Id.* The doctrine frees civil courts completely from entanglement in questions of religious doctrine, polity, and practice, and permits the application of property, corporate, and other forms of law to church disputes. *Id.; see also All Saints Parish Waccamaw v. Protestant Episcopal Church in the Diocese of S.C.*, 385 S.C. 428, 445, 685 S.E.2d 163, 172 (2009).

This Court provided a clear explanation of the neutral principles of law approach in *Pearson:*

(1) Courts may not engage in resolving disputes as to religious law, principle, doctrine, discipline, custom, or administration; (2) courts cannot avoid adjudicating rights growing out of civil law; (3) in resolving such civil law disputes, courts must accept as final and binding the decision of the highest religious judicatories as to religious law, principle, doctrine, discipline, custom, and administration.

*Pearson*, 325 S.C. at 53, 478 S.E.2d at 854.

The *Pearson* rule established that the First Amendment requires a civil court to enter a church dispute only when the resolution rests on neutral principles of law. *All Saints Parish*, 385 S.C. at 445, 685 S.E.2d at 172. However, if the issue is merely a question of religious law or doctrine masquerading as a dispute over church property or corporate control, courts must defer to the decisions of the proper church judicatories insofar as the dispute concerns religious or

doctrinal issues. *Id.* (citing *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976)). Simply put, the doctrine stands for the proposition that, where a civil court may completely resolve a church dispute on neutral principles of law without entangling itself in internal church governance or doctrinal matters, the First Amendment does not bar the court from entertaining jurisdiction. *Milivojevich*, 426 U.S. at 721, 96 S.Ct. 2372.

This Court's decision in *All Saints Parish* illustrates the doctrine. In that case, this Court decided the validity of an 18th Century trust deed, and whether certain members of the congregation were the corporate officers of the parish. *All Saints Parish*, 385 S.C. at 441, 685 S.E.2d at 170. The Court decided such issues as property ownership, the duties of trustees, identification of possible beneficiaries pursuant to the trust deed, and whether corporate control documents had been adopted in accordance with state law. *Id.* at 445–51, 685 S.E.2d at 172–75. In my view, these are the types of issues ripe for an analysis relying on the neutral principles of law doctrine.

I find that the instant case is not comparable. *All Saints Parish* involved issues unaffected by the religious nature of the dispute. Here, Brantley made the statements in question during the course of a congregational meeting while discussing issues *inextricably related to church governance.* A court cannot possibly exercise jurisdiction over this matter without becoming ensnared in the internal workings of the church's system of self-governance. Moreover, under the Church's constitution, the Trustees are responsible for more than just the financial well-being of the Church, they are also responsible for the spiritual leadership of the congregation. *See Hutchison v. Thomas*, 789 F.2d 392, 396 (6th Cir.1986) ("The 'neutral principles' doctrine has never been extended to religious controversies in the areas of church government, order and discipline, nor should it be. The claim here relates to appellant's status and employment as a minister of the church. It therefore concerns internal church discipline, faith, and organization, all of which are governed by ecclesiastical rule, custom, and law.") (citation omitted).

*All Saints Parish* implicitly relied on this Court's holding in *Morris St. Baptist Church v. Dart,* 67 S.C. 338, 45 S.E. 753 (1903). In that case, this Court explained:

> Where, however, a church controversy necessarily involves rights growing out of a contract recognized by the civil law, or the right to the possession of property, civil tribunals cannot avoid adjudicating these rights, under the law of the land; having in view, nevertheless, the implied obligations imputed to those parties to the controversy who have voluntarily submitted themselves to the authority of the church by connecting themselves with it.

*Id.* at 338, 45 S.E. 753, 754. It is clear that *Dart* envisioned two typical scenarios for court intervention into church disputes: those controversies arising from a civil contract or property possession. While I would not rigidly constrain the Court's authority to these two instances, our precedents do not stand for the proposition that the courts should involve themselves in a defamation claim arising from statements made during a meeting called for the express purpose of discussing church matters, including the continued service of its Trustees in the wake of a financial crisis for the institution.

In my opinion, the United States Court of Appeals for the First Circuit's decision in *Natal v. Christian & Missionary Alliance,* 878 F.2d 1575 (1st Cir.1989), is instructive. In that case, a reverend filed suit in federal district court against a non-profit religious corporation, the Christian and Missionary Alliance (the CMA). *Id.* at 1576. The reverend alleged that the CMA "unceremoniously" discharged him in contravention of the organization's governance procedures, and as a result, tarnished his reputation. *Id.* The CMA filed a motion to dismiss pursuant to Rule 12(b)(6), FRCP, and the district court granted that motion. *Id.*

The First Circuit affirmed, basing its decision on the well-settled principle that civil courts cannot adjudicate disputes turning on church policy and administration or religious doctrine and practice. *Id.* at 1576. The fact that the reverend couched his complaint in terms of the CMA failing to follow its own rules, thus denying him due process, was of no moment. According to the court, "Howsoever a suit may be labeled, once a court is called upon to probe into a religious body's

selection and retention of clergymen, the First Amendment is implicated." *Id.* at 1577. Adjudication of the reverend's complaint would have required forbidden judicial intrusion into "rules, policies, and decisions which are unmistakably of ecclesiastical cognizance," and thus the court refused to intervene. *Id.* ("It is well-settled that religious controversies are not the proper subject of civil court inquiry. Religious bodies must be free to decide for themselves, free from state interference, matters which pertain to church government, faith, and doctrine."); *see Heard v. Johnson,* 810 A.2d 871, 884–86 (D.C.2002) (rejecting a pastor's defamation claim following his removal by the church's trustees on the principle that the prohibition against judicial encroachment into church decisions included the employment of ministers because selection and termination of clergy is a core matter of ecclesiastical self-governance not subject to interference by a state).

In the instant case, the Trustees held positions in which they were beholden to the congregation, and responsible for supporting the spiritual ministry of the Church. The First Amendment permits the Church to establish its own rules and regulations for internal discipline and government, and to create a tribunal for adjudicating the Church's disputes. *See Milivojevich,* 426 U.S. at 724, 96 S.Ct. 2372. Moreover, when that tribunal decides a dispute, the Constitution requires that civil courts accept that decision as binding. *Id.* As observed in *Hosanna–Tabor v. Equal Employment Opportunity Commission,* —— U.S. ——, ——, 132 S.Ct. 694, 710, 181 L.Ed.2d 650 (2012), the Church must "be free to choose who will guide its way." The interests of a religious group in choosing who will preach its beliefs and carry out its mission demands that civil courts abstain from interference into disputes grounded in ecclesiastical decisions. *See id.*

The Trustees argue that the trial court may take jurisdiction because the Trustees did not contest their termination, were not employees of the church, and did not engage in litigation against a governing board. However, the Trustees ignore the pertinent facts that the alleged defamation took place during a congregational meeting and that the allegedly defamatory statements directly concerned their continued leadership, both financial and spiritual. Thus, the dispute here involved integral components of ecclesiastical governance.

I agree with the majority that certain torts fall squarely within the neutral principles of law doctrine. *See, e.g., Hosanna–Tabor,* 132 S.Ct. at 710 ("We express no view on whether the exception bars other types of suits, including actions by employees alleging breach of contract or tortious conduct by their religious employers. There will be time enough to address the applicability of the exception to other circumstances if and when they arise."). If Brantley made certain defamatory remarks unrelated to the Trustees' roles in the management of the Church's finances and their continued spiritual leadership, the analysis might very well be different. Because the alleged defamatory remarks center on the relationship between Brantley and his Board and the Trustees and their role in Church affairs and spiritual life before a self-governing congregation, I respectfully disagree with an analysis invariably placing civil courts in the position of having to referee this type of ecclesiastical decision-making.

KITTREDGE, J., concurs.