**Yudah GRUNWALD, Plaintiff,**

v.

**Ben Zion BORNFREUND et alia, Defendants.**

**No. CV–85–3338.**

United States District Court, E.D. New York.

Sept. 15, 1988.

Weg & Myers, P.C., New York City, for plaintiff.

Rabin & Sirota, New York City, for defendants Obstfeld and Brown Knapp & Co.

Meissner Tisch & Kleinberg, New York City, for defendants Yeshiva and Halberstam.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

This case is brought under the Racketeer Influenced Corrupt Organization Act and various provisions of state law. The matter is now before me on the motion of plaintiff for a "writ and mandate of this Court" prohibiting the "Central Rabbinical Congress of the United States and Canada, its Rabbinical Court and its members" (the "Rabbinical Congress"), and defendants from making any efforts to have plaintiff withdraw his action from this Court and submit it to a rabbinical or ecclesiastical court and from temporarily or permanently excommunicating plaintiff, his counsel, and staff. For the reasons set forth below, plaintiff's motion is denied.

The facts that follow are taken from the affirmation of Frank H. Weg, Esq., plaintiff's attorney.[1] This document is not a model of clarity. The situation it attempts to describe, however, is not very complex.

Although not explicitly stated, it may be inferred that plaintiff and some of the noncorporate defendants are members of the same branch of Orthodox Judaism. Apparently, some of the defendants are persons of some stature within that community.

Some of the defendants, though Mr. Weg does not name them, are said to have gone to various rabbis within the Orthodox community in order to pressure plaintiff to withdraw this action and to submit his dispute with defendants to a rabbinical court. Mr. Weg does not state whether any of the rabbis to whom the unnamed defendants have gone are in any way connected with respondent Rabbinical Congress. In fact, Mr. Weg does not explain what the Rabbinical Congress is or what its relation is to plaintiff or defendants.[2]

Taking Mr. Weg's allegations as true for purposes of this motion, defendants, or some of them, seek to have a *siruv niddui*

or *herem*, forms of excommunication,[3] issued against plaintiff and his counsel, the result of which would be their ostracization by the Orthodox community. In addition, defendants Naftali, Halberstam and the Bobover Yeshiva are said to have sought to have plaintiff and his counsel declared *misserim*, or informers.

Mr. Weg sets forth a list of the potential consequences of the efforts by defendants to have his client excommunicated. Citing the *Encyclopedia Judaevca* (1985), Weg claims that plaintiff may be totally excluded from the community, he will not be able to shop at the stores of members of the community, his *zizzitt*, a fringed garment worn by observant Jews, may be cut off, the *mezuzah*, religious verses in a container, may be removed from his door, and there will be no religious prohibition on injury to his property or, indeed, his murder. Mr. Weg does not, however, state what the likelihood of the *siruv* being issued is or the likelihood that anyone would carry out acts of violence against plaintiff or his property in the absence of a religious prohibition on such acts.[4]

Mr. Weg acknowledges that his allegations are vague. He claims that this vagueness is the result of the terrorization of the Orthodox community by the "cartel" that is threatening plaintiff. He states that no one with knowledge of the allegations will sign a sworn statement to support them. Be that as it may, Mr. Weg has not set forth any allegations on personal knowledge or on information and belief that any concrete injury is about to befall plaintiff as a result of the actions he seeks to prevent.

The Weg affirmation claims that the motivation behind the efforts to have plaintiff declared a religious outcast is that defendants wish to have plaintiff withdraw his complaint in this court and submit his dis-

---

1. Defendants Obstfeld and Brown, Knapp & Co. have submitted a memorandum of law.

2. The Rabbinical Congress is not mentioned in the affidavit of service and presumably has no notice of this proceeding.

3. *Niddui* is a less drastic form of excommunication; it is temporary; *herem* involves a permanent exclusion from the community.

4. The Weg affirmation also contains claims concerning consequences for the Weg and Myers law firm.

pute to a rabbinical court. Plaintiff claims that this is an effort to "oust this Court of jurisdiction." Accordingly, he seeks relief under the All Writs Act, 28 U.S.C. § 1651(a).

## DISCUSSION

The All Writs Act, 28 U.S.C. § 1651(a), provides that the federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law." Among the writs a court may issue in aid of its jurisdiction is an injunction. *See In re Baldwin United Corp.,* 770 F.2d 328 (2d Cir.1985). In this case, plaintiff has not explained how his threatened excommunication endangers this Court's exercise of jurisdiction over his claims in this Court. Whether accepted by his co-religionists or not, plaintiff can pursue his claims here. This is not a case where one court is threatening to disrupt a settlement or final judgment. *See Amalgamated Sugar Co. v. N L Industries, Inc.,* 825 F.2d 634 (2d Cir. 1987); *In re Baldwin United, supra.*

■ Here, nothing the rabbinical court can do can interfere with this Court's powers to adjudicate the matter plaintiff has placed before it. The threat of excommunication is no different from any other legal, albeit grievous, consequence of litigation that one side may point out to another. Excommunication is not a harm for which courts will provide a remedy, and it is not within the "usages and principles of law," 28 U.S.C. § 1651(a), for a court to interfere with an excommunication.

■ A long line of Supreme Court cases holds that, where a religious body adjudicates relations among its members, courts will not interfere with the decisions of those bodies made in accordance with those bodies' rules. *Gonzalez v. Archbishop,* 280 U.S. 1, 50 S.Ct. 5, 74 L.Ed. 131 (1929); *Bouldin v. Alexander,* 82 U.S. (15 Wall) 131, 139–40, 21 L.Ed. 69 (1872); *Watson v. Jones,* 80 U.S. (13 Wall) 679, 20 L.Ed. 666 (1871). This line of cases is based on the Court's observation that voluntary religious organizations are much like any other voluntary organization and are in the best position to interpret their own rules. As the Court stated in *Watson v. Jones, supra:*

> "It is not to be supposed that the judges of the civil courts can be as competent in ecclesiastical law and religious faith ... as the ablest men in each [faith] are in reference to their own. It would therefore be an appeal from the more learned tribunal in the law to which should decide the case to one which is less so."

80 U.S. (13 Wall) at 729. Thus, federal courts will not interfere with the decisions of a religious body adjudicating the relationships of members in that body; as a matter of jurisprudence federal courts will defer to the decision of the religious body.

In other cases, the Supreme Court has held that it is contrary to the first amendment for a court, either federal or state, to engage in an examination of ecclesiastical doctrine, and unless such examination cannot be avoided, a court must defer to the decisions of a religious body. *Serbiam Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 721–23, 96 S.Ct. 2372, 2386–87, 49 L.Ed.2d 151 (1976); *Maryland & Virginia Churches v. Sharpsburg Church,* 396 U.S. 367, 368, 370, 90 S.Ct. 499, 500, 501, 24 L.Ed.2d 582 (1970) (Brennan, J., concurring).

In this case, plaintiff asks the Court to do something it is not able to do either as a matter of federal jurisprudence or under the first amendment: decide whether plaintiff should be excommunicated from his religious community for prosecuting this suit against defendants. Of course, the fact that an action is taken by a religious body does not exclude it from judicial scrutiny. Should plaintiff be threatened with a legally cognizable harm by defendants or a rabbinical court in trying to coerce him from pursuing his claims, he could come to this Court for a remedy. *See EEOC v. Pacific Press Pub. Ass'n,* 676 F.2d 1272 (9th Cir.1982); *see generally* Annotation *Suspension of Expulsion from Church or Religious Society and the Remedies Therefor,* 20 A.L.R.2d 421, 472–73. The mere expulsion from a religious society, with the exclusion from a religious commu-

nity, is not a harm for which courts can grant a remedy.

In *Paul v. Watchtower Bible and Trust Soc. of New York, Inc.*, 819 F.2d 875 (9th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 789, 98 L.Ed.2d 249 (1987), the court found that the tort law of the State of Washington could not, without violating the first amendment, hold the Jehovah's Witnesses liable for the religious practice of "shunning," a practice similar in its consequences for a member of the Jehovah's Witnesses to the issuance of a *siruv niddui* or *herem*. The court held that a religious organization has a defense of constitutional privilege to claims of intangible harms. *Id.*, at 883.

The cases plaintiff cites are inapposite. These cases all stand for the proposition that the first amendment does not protect religious organizations or leaders from ordinary civil and criminal liability. *See United States v. Sun Myung Moon*, 718 F.2d 1210 (2d Cir.1983). Here, plaintiff is free to pursue his claims against defendants. That defendants might have plaintiff excommunicated for doing so is beyond the powers of this Court to stop, so long as the excommunication results in nothing more than plaintiff being excluded from his religious community. *Paul, supra; see Pacific Press, supra*, 676 F.2d at 1281. To the extent that the Weg affirmation alleges that plaintiff will suffer battery, trespass, or theft in the absence of a religious prohibition against those acts, plaintiff has failed to show that such injury is imminent or likely. The harm which will give rise to an injunction must be "not remote and speculative but actual and imminent." *State of New York v. Nuclear Reg. Comm'n*, 550 F.2d 745, 755 (2d Cir.1977). "Judicial intervention to prevent injury from misconduct is not justified when such misconduct is merely hypothetical." *Socialist Workers Party v. Attorney General of U.S.*, 642 F.Supp. 1357, 1425 (S.D.N.Y.1986), *citing Halkin v. Helms*, 690 F.2d 977, 1005 (D.C.Cir.1982).

In this case, both the excommunication of plaintiff and the harm that plaintiff will suffer as a result are entirely speculative.

For this and all of the above reasons, plaintiff's motion is denied.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.