DAVIS LEE PHARMACY, INC. and
Dae Youn Lee, Plaintiffs,

v.

MANHATTAN CENTRAL CAPITAL
CORP., Kunsang Guak, David Choi,
Chungkuk Kim, Mooyoung Soh,
Ungchan Kim, Hokwan Rho, Joohan
Choi, John Does and Jane Does 1–10,
Defendants.

No. 04–CV–0160(JBW).

United States District Court,
E.D. New York.

July 15, 2004.

Michael S. Kimm, Esq., Hackensack, NJ, for Plaintiff.

Jay Sung Lee, Esq., New York City, for Defendant Kunsang Guak.

Kim & Bae, P.C. by Christine M. Bae, Esq., Carlton R. Asher, Jr., Esq., New York City, for Defendants Chungkuk Kim,

Mooyoung So, Ungchan Kim, Hokwan Rho, and Joohan Choi.

## MEMORANDUM, JUDGMENT & ORDER

JACK B. WEINSTEIN, Senior District Judge.

### I. *Introduction*

Plaintiff Dae Youn Lee alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") arising out of a soured business arrangement. The complaint alleges that defendants Kunsang Guak and David Choi, operating as the Manhattan Central Capital Corporation ("MCCC"), engaged in acts of mail fraud and wire fraud to deprive plaintiff of his business and property rights. It contends that the remaining defendants—Chungkuk Kim, Mooyoung So, Ungchan Kim, Hokwan Rho and Joohan Choi ("Church defendants")—conspired to use their leadership positions in the Grace Korean Presbyterian Church to threaten plaintiff with the loss of his church membership if he did not withdraw his lawsuit against defendant Guak in New York state court.

Defendant Guak moves for dismissal, arguing that considerations of comity and judicial efficiency warrant bringing all claims in one forum, namely the New York state action that has been pending against him for two years. The Church defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a RICO claim against them.

For the following reasons, the Church defendants' motion to dismiss is granted. Defendant Guak's motion is denied.

### II. *Facts*

The complaint alleges that plaintiff Dae Youn Lee met defendant Kunsang Guak in 1979 through a relative. They became acquaintances socially and through the Grace Korean Presbyterian Church, which they both attended. In 1989, Guak asked Lee for a $50,000 loan to invest in a business project. Lee agreed with a handshake; apparently no papers memorializing the arrangement were ever signed. In 1990, Lee loaned Guak another $35,000. Both loans were subsequently repaid by Guak with checks issued by MCCC bearing the joint signatures of defendant David Choi, president of MCCC, and Guak. At that time, Guak advised Lee that the loan had been invested through MCCC and that Lee was being repaid from proceeds that belonged to Guak.

According to the complaint, Lee and Guak engaged in no further business dealings until 1994 when Guak told Lee he was being audited and asked him to sign some loan application papers. Lee refused. In October 1995, Lee received demands for repayment of so-called outstanding loans from the Small Business Administration ("SBA"). Lee claims that he had no knowledge of any loans taken out in his name, but after some investigation, he discovered that Guak, in concert with David Choi and others, had forged his name and manufactured fraudulent loan documents. SBA, as an investor and lender to MCC (which had since gone out of business), was pursuing claims against Lee for these allegedly fraudulent loans.

In 2002, Lee and his wife brought suit against Guak in Queens County Supreme Court to recover damages for economic and emotional distress. Claiming that Lee was slandering him to other church members, Guak commenced an action in 2003 under the bylaws of Korean Presbyterian Churches in America. According to Lee, this was a "sham religious complaint" that led to a "mock trial" orchestrated in retaliation for his commencement of a civil suit against Guak. The church proceedings were held before defendant Chungkuk Kim, the minister of the church, and defendants Mooyoung So, Ungchan Kim,

Hokwan Rho and Joohan Choi, all elders within the church. The Church Defendants suspended the leadership positions of Lee, his wife, and Guak within the church pending a final judgment in the New York state court action. Lee and his wife have appealed; that appeal has apparently been dismissed by the highest religious court within the Korean Presbyterian system.

In January 2004, Lee commenced this federal action against Guak and Choi, as well as the members of the church tribunal alleging RICO and conspiracy to commit RICO violations and state law claims of breach of fiduciary duty, intentional infliction of emotional distress, and consumer fraud. The complaint alleges that defendants MCC, Guak and Choi were members of an unlawful enterprise engaged in a pattern of racketeering activity committed over a substantial period of time including multiple acts of mail fraud and wire fraud. It further alleges that the Church defendants conspired with defendant Guak to force Lee to drop his New York state court action against Guak by threatening to, and ultimately revoking, his church leadership status.

### III. *Stating a Claim*

#### A. *Law*

##### i. *RICO*

■ The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* provides for treble civil damages for injuries sustained by any person in his business or property by reason of the defendant's use of racketeering—derived income to invest in, acquire, or control an enterprise engaged in or affecting foreign or interstate commerce. 18 U.S.C. §§ 1962, 1964(c). To state a claim for civil damages under RICO, a plaintiff has two pleading burdens. First, he must allege that the defendant has violated the substantive RICO statute. 18 U.S.C. § 1962. Second, he must allege that he was injured in his business or property by reason of section 1962. 18 U.S.C. § 1964(c).

##### a. *Section 1962*

■ In order to state a claim for a violation of the substantive RICO statute, a plaintiff must allege: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir.1983).

■ "Racketeering activity" includes mail fraud and wire fraud. 18 U.S.C. § 1961(1). A violation of the Hobbs Act is also considered a predicate offense under RICO. *Id.* The Hobbs Act prohibits the obstruction, delay or effect on commerce by robbery or extortion or the attempt or conspiracy to do so. 18 U.S.C. § 1951(a). Extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or under color of official right." 18 U.S.C. § 1951(b)(2). To "obtain property" requires not only the deprivation but also the acquisition of property. *Scheidler v. National Organization for Women*, 537 U.S. 393, 409, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003). The requirement that property must be obtained to constitute extortion is necessary to distinguish it from the separate crime of coercion, which involves the use of force or threat of force to restrict another's freedom of action. *Id.* at 405, 123 S.Ct. 1057.

■ A plaintiff claiming a conspiracy to violate section 1962 must prove an agreement by each defendant to commit at least two predicate acts. *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990). The conspirator need not have agreed to commit the two or more predicate acts himself. *Salinas v.*

*United States,* 522 U.S. 52, 65, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997).

A conspirator must intend to further an endeavor which, if completed, would satisfy all the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion. One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense.

*Id.*

■ "Pattern of racketeering activity" is defined as at least two acts of racketeering activity occurring within ten years of each other. 18 U.S.C. § 1961(5). The acts must be related and amount to or pose of threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Predicate acts are related if they have the "same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. 2893 (citation omitted). Distinct patterns of racketeering activity should be brought as separate RICO offenses. *See United States v. Dean,* 647 F.2d 779, 787–88 (2d Cir.1981).

### b. *Section 1964(c)*

■ In addition to pleading a violation of 18 U.S.C. § 1962, it is necessary to show injury by reason of the violation. 18 U.S.C.1964(c). Civil recovery is limited to those who incur injury to "business or property." *Id.* It is inapplicable to claims for damages arising from physical injury or emotional distress. *See, e.g., Pohlot v. Pohlot,* 664 F.Supp. 112, 116 (S.D.N.Y. 1987); *von Bulow v. von Bulow,* 634 F.Supp. 1284, 1308–09 (S.D.N.Y.1986).

■ The exclusion of a person from a religious community is not a cognizable injury under section 1964. *See Grunwald v. Bornfreund,* 696 F.Supp. 838, 840–41 (E.D.N.Y.1988) (dismissing RICO claim against rabbinical congress and court because "[t]he mere expulsion from a religious society, with the exclusion from a religious community, is not a harm for which courts can grant a remedy").

### ii. *State Law Claims*

■ Although religious bodies are not completely exempt from civil and criminal liability, *see, e.g., United States v. Sun Myung Moon,* 718 F.2d 1210, 1227 (2d Cir.1983), the First Amendment protects them when the adjudication of a claim would require a judicial determination of the validity of a religious belief. *United States v. Ballard,* 322 U.S. 78, 88, 64 S.Ct. 882, 88 L.Ed. 1148 (1944). "A long line of Supreme Court cases holds that, where a religious body adjudicates relations among its members, courts will not interfere with the decisions of those bodies made in accordance with those bodies' rules." *Grunwald,* 696 F.Supp. at 840 (citing *Gonzalez v. Archbishop,* 280 U.S. 1, 50 S.Ct. 5, 74 L.Ed. 131 (1929); *Bouldin v. Alexander,* 82 U.S. (15 Wall) 131, 21 L.Ed. 69 (1872); *Watson v. Jones,* 80 U.S. (13 Wall) 679, 20 L.Ed. 666 (1871)). Thus, claims for breach of fiduciary duty and intentional infliction of emotional distress are not available in New York when their adjudication would require the courts to "venture into forbidden ecclesiastical terrain." *See Langford v. Roman Catholic Diocese of Brooklyn,* 271 A.D.2d 494, 705 N.Y.S.2d 661, 662 (2 Dep't 2000).

### B. *Application of Law to Facts*

### i. *RICO*

■ Plaintiff's claim that the Church defendants conspired to commit RICO vio-

lations is dismissed because it fails to allege a conspiracy to violate the substantive RICO statute and fails to allege injury to business or property by reason of such violation.

■ Plaintiff has failed to allege an agreement on the part of the Church defendants to commit two or more acts constituting a "pattern of racketeering activity." Plaintiff has only alleged the Church defendants' direct participation in one act—the use of threats to induce plaintiff to drop his lawsuit against defendant Guak and the ultimate suspension of plaintiff's leadership position within the church in violation of the Hobbs Act. This one alleged act does not, in the context of this case, constitute a predicate act of racketeering. Even if plaintiff's position in the church could be considered "property," the defendants must have acquired that property in addition to depriving plaintiff of it in order to constitute extortion. Plaintiff's allegation is more akin to the separate crime of coercion (i.e. that defendants used force or the threat of force to restrict his freedom to bring a civil lawsuit). It is not encompassed within the terms of the Hobbs Act, and thus, does not constitute a predicate act under RICO.

■ The other predicate acts of racketeering alleged in the complaint can not be attributed to the Church defendants. Plaintiff's allegations that defendants Guak and Choi committed various acts of wire fraud and mail fraud are too remote in time, purpose and method of commission to be considered part of the same pattern of racketeering activity as that encompassing the Church defendants. Rather, plaintiff has alleged two distinct patterns of activity. One pattern of activity involves the alleged forging of his name on loan documents and related acts of mail and wire fraud perpetrated by defendants Guak and Choi. The Church defendants' alleged conspiracy to induce plaintiff to drop his civil lawsuit is independent from the continuing pattern of racketeering activity engaged in by Guak and Choi. Were the matter treated in terms of common law conspiracy, the conspiracy the Church defendants allegedly participated in was distinct from the continuing conspiracy Guak and Choi allegedly conducted.

Plaintiff has also not alleged injury to "business or property" as required to bring a claim for civil damages under RICO. Neither the suspension or exclusion of a person from membership in a religious community, nor the resulting emotional distress, are cognizable injuries within the meaning of section 1964(c).

### ii. *State Law Claims*

■ Plaintiff's claims for breach of fiduciary duty and intentional infliction of emotional distress are dismissed due to excessive entanglement with religion. Because the claims arise out of the Church defendants' decision to suspend the leadership status of plaintiff and his wife within the Korean Presbyterian church, the adjudication of these claims would necessarily involve an examination of the Church tribunal's decisionmaking process. This court is not in a position to interpret the rules of the Korean Presbyterian Church, and it would probably constitute an interference with First Amendment rights were it to do so.

### IV. *Abstention*
### A. *Law*

■ The stay or dismissal of a federal action on the ground that there is a similar action pending in state court has been referred to as "a fourth type of abstention." *See* 17A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4247 at 116–17. "Abstention from the exercise of federal jurisdiction is the exception, not

the rule." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). A district court may abdicate its duty to adjudicate a case properly before it only in exceptional circumstances. *Id.* (quotation omitted). "Generally ... the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction...." *Id.* at 817, 96 S.Ct. 1236 (citation omitted). In determining whether there are extraordinary factors warranting *Colorado River* abstention, the following factors will be balanced: (1) the assumption of jurisdiction by either court over a *res;* (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which the actions were filed; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. *De Cisneros v. Younger,* 871 F.2d 305, 307 (2d Cir.1989); *Burnett v. Physician's Online, Inc.,* 99 F.3d 72, 76 (2d Cir.1996).

 In this circuit, there is a "heavy presumption favoring the exercise of jurisdiction," *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 327 (2d Cir.1986). *Colorado River* abstention has been found appropriate under very limited circumstances. *See, e.g., Arkwright–Boston Manufacturers Mutual Insurance Co. v. City of New York,* 762 F.2d 205, 211 (2d Cir.1985) (action arising out of electrical power blackout involving hundreds of claim and implicating significant local interests); *Telesco v. Telesco Fuel and Masons' Materials, Inc.,* 765 F.2d 356, 363 (2d Cir.1985) (case involving a novel state law theory); *Cannady v. Valentin,* 768 F.2d 501, 503 (2d Cir.1985) (case implicating New York City and State welfare policies).

### B. *Application of Law to Facts*

 No circumstances overcome the heavy presumption favoring the exercise of federal jurisdiction. Neither the state court nor this court has jurisdiction over any property. Nor can it be argued that the federal courthouse in Brooklyn is more inconvenient than the Queens County Supreme Court. Although the state court action has been pending for over two years, it does not assert a RICO claim and does not involve identical defendants. Finally, it is federal law that provides the rule of decision for plaintiff's RICO claims.

### V. *Conclusion*

The Church defendants' motion to dismiss is granted. To the extent that plaintiff's claims against the remaining defendants for breach of fiduciary duty and intentional infliction of emotional distress arise out the Church tribunal's decision to suspend his leadership status within the church, they are also dismissed. Defendant Guak's motion to dismiss or stay these proceedings because of the pending state court case is denied. Plaintiff's RICO claims and state law claim for consumer fraud will proceed against defendants Guak and Choi. Plaintiff is granted 20 days from the date of this opinion to amend any and all claims.

SO ORDERED.