SEE, Justice
(concurring in part and dissenting in part).
The “Concerned Members of Old Elam Baptist Church” sought injunctive relief against the Board of Trustees/Directors and/or Deacons of Old Elam Baptist Church (“the Church”), claiming a right as members to inspect and copy the business records of the Church, a nonprofit corporation. The Church argued that the concerned members had been expelled, first, by sending them each a letter explaining that they were on probationary status, and, second, by amending the bylaws of the Church to expel automatically any member who sues the Church or its leadership. The trial court concluded that the concerned members had a right to inspect the records, and the Church petitioned this Court for the writ of mandamus. The main opinion holds that the Church has demonstrated a clear legal right to an order directing the trial court to vacate its order compelling production of the records, but nonetheless concludes that the Church has not demonstrated a clear legal right to have the action against it dismissed.
The main opinion holds, and I agree, that the Church is entitled to have vacated the trial court’s order granting the concerned members access to the Church’s business records. The main opinion states:
“The trial court could not hold that the plaintiffs are members of the Church, because, assuming that the [Standard Operating Procedures] are the bylaws of the Church and that the resolution of October 27 was a valid amendment to those bylaws, the plaintiffs’ membership in the Church was terminated before the trial court issued its order of November 4, 2005.”
983 So.2d at 1093.
The main opinion further concludes that the Church has not demonstrated a clear legal right to an order directing the trial court to dismiss this action, concluding that the trial court should inquire into “whether ‘the expulsion was the act of the authority within the church having the power to order it.’ ” 983 So.2d at 1092-93 (quoting Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746, 748 (Ala.1976)). I reluctantly dissent from the main opinion on this point.
In Lott v. Eastern Shore Christian Center, 908 So.2d 922, 930 (Ala.2005), a panel of this Court recognized that “[we] must *1095 not interfere with the fundamental ecclesiastical concern of determining who is and who is not [a Church] member.” (Footnote omitted.) This Court held that, “[i]n seeking to preempt church discipline ..., the motion for a [temporary restraining order] essentially invited the court to become embroiled in the merits of a ‘fundamental ecclesiastical concern’ with which the courts must have nothing to do, namely, ‘determining who is and who is not [a Church] member.’” Lott, 908 So.2d at 930-31 (quoting Burgess v. Rock Creek Baptist Church, 734 F.Supp. 30, 33 (D.D.C. 1990)). Nonetheless, our opinions in Lott and Yates v. El Bethel Primitive Baptist Church, 847 So.2d 331 (Ala.2002), suggest that this Court can review the decision of a church to expel a member to determine whether the church “acted in accordance with its established procedures.” Lott, 908 So.2d at 928. Thus, it appears that this Court has engrafted a due-process requirement, albeit a limited one, onto a church’s decision to expel a member. See Nixon, 340 So.2d at 748 (“A determination of whether the fundamentals of due process have been observed can be made in the judicial arena.”). I dissented in yates, which involved the election of church deacons, because I believe that “[t]he election of a deacon is necessarily steeped in church doctrine” and that the trial court therefore could not constitutionally set aside the election. 847 So.2d at 369 (See, J., dissenting).
The Supreme Court of the United States stated in Serbian Eastern Orthodox Diocese for the United States of America & Canada v. Milivojevich, 426 U.S. 696, 715, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976), that “[c]onstitutional concerns of due process, involving secular notions of ‘fundamental fairness’ or impermissible objectives, are ... hardly relevant to such matters of ecclesiastical cognizance.” The Supreme Court tells us that the First Amendment prohibits “inquiry into the procedures that canon or ecclesiastical law supposedly requires the church judicatory to follow, or else into the substantive criteria by which they are supposedly to decide the ecclesiastical question.” Milivojevich, 426 U.S. at 713, 96 S.Ct. 2372. Instead, the Supreme Court has recognized “the general rule that religious controversies are not the proper subject of civil court inquiry, and that a civil court must accept the ecclesiastical decisions of church tribunals as it finds them.” Milivojevich, 426 U.S. at 713, 96 S.Ct. 2372.
Thus, like any other controversy over internal ecclesiastical discipline, polity, authority, or governance, a dispute over the propriety of a member’s “expulsion from a religious society ... is not a harm for which courts can grant a remedy.” Grunwald v. Bornfreund, 696 F.Supp. 838, 840-41 (E.D.N.Y.1988). Questions of internal compliance with ecclesiastical law, which require determinations of “the meaning of religious doctrine and canonical law” and whether such law “support[s] the decision church authorities have made,” are the sole province of ecclesiastical authorities and are not within the cognizance of civil courts. Scharon v. St. Luke’s Episcopal Presbyterian Hosps., 929 F.2d 360, 363 (8th Cir.1991). See also Nunn v. Black, 506 F.Supp. 444, 448 (W.D.Va.1981) (“[T]his court is compelled by the First Amendment to avoid adjudicating the issue of whether the plaintiffs’ expulsion was in accordance with the procedure prescribed by the Church of God of Prophecy.... [B]oth procedural-governance questions and doctrinal disputes are constitutionally removed from this court’s review.”), aff'd 661 F.2d 925 (4th Cir.1981) (table); Fowler v. Bailey, 844 P.2d 141, 145 (Okla.1992) (“We now accept as fundamental the position that a church’s decision as to the status of a person’s church membership *1096 must be considered as binding and beyond the reviewing power of courts such as ours.”).
“While it is tempting for the courts to step into the internal operations of a church to assure that the church functions as the courts believe it should, to do so establishes a precedent that places at peril our cherished right to the free exercise of religious faith.” Yates, 847 So.2d at 370 (footnotes omitted) (See, J., dissenting). Inquiring into whether a church followed its procedures in expelling its members is tantamount to denying the Church its right to decide who may be a member. The main opinion purports not to be addressing who may or may not be a member of Old Elam Baptist Church, but only “whether ‘the expulsion was the act of the authority within the church having the power to order it.’ ” 983 So.2d at 1092-93. It may seem axiomatic to one steeped in the law that in order to turn over to ecclesiastical authorities the determination of who is a member of the church, the court first must determine who is the proper authority within the church. Making such a finding, however, requires the court to examine by what procedure the proper authority is selected and then to determine whether that procedure was followed. The procedure likely requires some act of the membership, which will require the court to decide who were members of the church at the time the church authority was selected. Thus, a rule that requires the court to determine who constitutes the “church authority” circles back to enmesh civil authorities in church business.[11]
I understand that to leave this controversy in the hands of the disputants promises to be messy. It is disquieting to contemplate that the religious community might not resolve its differences in a way that we consider fair and consistent with the law on the subject. I concede that the religious community may not ultimately resolve this matter as we would.[12] However, there are other values at stake. I do not believe that the trial court may constitutionally, as the main opinion instructs it to do, inquire into “whether ‘the expulsion was the act of the authority within the church having the power to order it.’ ” 983 So.2d at 1092-93. To inquire into whether those acting on behalf of the Church had the authority to terminate the plaintiffs’ membership necessarily invades the “ecclesiastical concerns” that are protected from state interference by the First Amendment. As the Supreme Court of the United States noted in holding that the National Labor Relations Board has no jurisdiction to oversee the labor relations between teachers and church-operated schools, “[i]t is not only the conclusions that may be reached by [the governmental authority] which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions.” NLRB v. Catholic Bishop of Chicago, 440 U.S. 490, 502, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979) (footnote omitted).[13]
*1097 I respectfully dissent from this Court’s decision to allow the concerned members to challenge in court their expulsion from the Church.[14] Yet, my dissent is a reluctant one, because there comes a point where the State has no choice but to act, if for no other reason, to prevent bodily harm and destruction of the property of others.[15]

. We may be fortunate. There may in this case be no dispute as to the identity of the proper church authority; however, we here establish a precedent that may next be invoked in a less convenient circumstance.

. Isaiah 55:8 ("For my thoughts are not your thoughts, neither are your ways my ways, saith the Lord.").

.I note, however, that the United States Court of Appeals for the Eighth Circuit held in Action v. Gannon, 450 F.2d 1227 (8th Cir.1971), that a federal court can fashion a properly tailored injunction to prevent outside parties who are not invited onto the church property from entering the property and disrupting religious services. In a case such as this, I must concede that if the Eighth Circuit is correct, it is hard to see how the court can *1097 do so without inquiring into who are the members of the Church.

. I recognize that, in this case, allowing the Church to expel a member in order to deny that member access to the Church's business records may violate the public policy created by § 10-3A-43, Ala.Code 1975 (giving members of nonprofit corporations access to certain records of the corporation). However, under the Supremacy Clause of the Constitution of the United States, a church's First Amendment right to decide who will be a member takes precedence over this State's statutory policy. U.S. Const. Art. VI (the Supremacy Clause).

. Once we have accepted the charge to address a religious dispute, it is exceedingly difficult to know where that charge ends. The parties to this church dispute thus impose upon this Court an unwelcome burden. It is constitutionally incumbent on us not to intrude into religion's realm, but this burden is not ours alone. Those engaged in religious activity have a comparable obligation not to invite or compel the courts to resolve their religious conflict. Surely there is someone the parties respect who can help them to overcome their differences, 1 Cor. 6:1-8, so that they will become an example and no longer a stumbling block. 1 Cor. 8:9.